THE PEOPLE *ex rel.* Adam Koch, Appellant, *vs.* LEWIS RINAKER *et al.* Appellees.

*Opinion filed December 21, 1911.*

1. CONSTITUTIONAL LAW—*law authorizing the organization of municipal corporations must be available to all citizens similarly situated.* If the power exists in the legislature to authorize the organization of a municipal corporation for the preservation of forests, it is essential to a valid exercise of such power that benefits of the law shall be available to all citizens similarly situated.

2. SAME—*Forest Preserve act of 1909 is invalid.* The provisions of the Forest Preserve act of 1909 prohibiting the creation of more than one district in a county, requiring the district to be composed of contiguous territory and leaving the question of annexing new territory to the will of the voters in territory adjoining the district, give to the inhabitants of the district first organized special privileges denied to other inhabitants of the county and render the act invalid; and the validity of the act is not aided by the fact that the first district organized may include an entire county. (*Wilson* v. *Trustees,* 133 Ill. 443, and *Owners of Lands* v. *People,* 113 id. 296, distinguished.)

3. ELECTIONS—*when election to create forest preserve district is illegal.* Under the provisions of the Forest Preserve act of 1909, even conceding that the preliminary steps for the organization of a district could be taken before voting upon the adoption of the act and an election be then held, at which both the proposition to adopt the act and the proposition to create the district could be voted upon at the same time, an election cannot be sustained where the voters in parts of the county voted only upon the question of the adoption of the act, whereas the voters in other parts voted upon both questions.

4. SAME—*election to organize under referendum statute is not analogous to election to organize under the Cities and Villages act.*

An election to organize a municipal corporation under a referendum statute is not analogous to an election to organize unincorporated territory into a city or village under the general Cities and Villages act, as the Cities and Villages act is not a referendum statute and the only vote required is upon the organization.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding.

W. H. STEAD, Attorney General, JOHN E. W. WAYMAN, State's Attorney, MAYER, MEYER, AUSTRIAN & PLATT, ROSS C. HALL, and McGOORTY & POLLOCK, (FREDERIC BURNHAM, and THOMAS MARSHALL, of counsel,) for appellant.

NEWMAN, NORTHRUP, LEVINSON & BECKER, and H. A. LEWIS, (JACOB NEWMAN, FRANK I. MOULTON, and CHESTER E. CLEVELAND, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a judgment of the superior court of Cook county dismissing an information in the nature of *quo warranto* filed by appellant against appellees, who are assuming to hold and exercise the duties, powers and functions of commissioners of a forest preserve district organized under an act of the legislature of 1909, entitled "An act to provide for the creation and management of forest preserve districts and repealing a certain act therein named." (Laws of 1909, p. 245.) The information alleged that said act is indefinite, uncertain, unconstitutional and void; that said act was not in force when the district was organized; that the ballots used at the election for the organization of the district were not in legal form, and that the adoption of the act was not legally submitted. Appellees pleaded, setting out in detail the proceedings had before the county judge in the organization of said district, embracing the whole of Cook county, the election held for the adoption of the act, and the organization of the district

and their appointment as commissioners of said district. The plea alleges the act under which the district was organized is a valid law, that the district was lawfully organized and appellees lawfully appointed commissioners thereof. A demurrer to the plea was overruled, and appellant electing to stand by the demurrer the information was dismissed, and from the judgment dismissing the information an appeal is prosecuted to this court.

It will be necessary to an understanding of the questions discussed to refer briefly to the substance of certain sections and provisions of the act.

Section 1 authorizes the incorporation as a forest preserve district of any area of contiguous territory lying wholly within one county and containing within its boundaries one or more cities, towns or villages, upon the petition of one thousand legal voters residing within the limits of the proposed district, to the county judge of the county in which the proposed district lies, praying the submission to the legal voters of such proposed district whether it shall be organized as a forest preserve district. The petition is required to contain a definite description of the territory intended to be embraced in the district and the name of the district. The petition is addressed to the county judge, and upon filing it in the office of the clerk of the county court the county judge is required to fix a day and hour for the public consideration thereof, which shall not be less than fifteen days after filing the petition, and if two or more petitions are filed, the hearing of all of them shall be set for the same day and hour. Notice of the time and place of such public hearing is required to be published three successive days in some newspaper of general circulation in the proposed district, the last publication to be not less than five days prior to the public hearing. At such public hearing the county judge is required to hear any person owning any property in the proposed district who desires to be heard, and said county judge is authorized to

fix the boundaries of the proposed district as shall to him seem best for the interests of all parties concerned. If two or more petitions are heard at the same time, the county judge may include a part or all of the territory described in each in one district and fix such name to such district as to him shall seem appropriate, but only one forest preserve district can be created in any county. Upon the determination of the territory to be embraced in a district and the name to be given it, the county judge shall order to be submitted to the legal voters of the proposed district, at any special or general election held therein, the question of the creation of such proposed district. If a majority of the votes cast upon such question are in favor of the creation of the forest preserve district it shall thenceforth be deemed an organized forest preserve district.

Section 2 places the management of the affairs of such district in a board of commissioners, consisting of a president and four commissioners, to be appointed by the board of county commissioners or by the chairman of the board of supervisors, by and with the advice and consent of the members of said board. Each member of such board of commissioners is required to be a legal voter in the district.

Section 3 authorizes the board of commissioners to pass and enforce necessary ordinances, rules and regulations for the management and conduct of the business and property of the district. Said section also fixes the salary of the president and members of the board, and authorizes them to appoint a secretary, treasurer and such other officers and employees as may be necessary.

The fourth section provides for keeping records and making annual reports to the county commissioners or the board of supervisors, and the fifth section provides for the publication of ordinances imposing a fine or penalty or making an appropriation.

The sixth section authorizes the commissioners to designate, by ordinance, any streets, roads and highways within

the limits of the district to be used as public driveways for pleasure driving, and to improve and maintain the same; also to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve and maintain such pleasure driveways, and to exclude traffic teams from such pleasure driveways, and to provide separate roadways for the use of traffic along or parallel to such pleasure driveways, and to keep and maintain such traffic roadways at the expense of the district. But no pleasure driveway is permitted to be established by the commissioners within territory embraced in any public park district of an incorporated city, village or town without the consent of the corporate authorities of such park district, city, village or town. The commissioners are given authority to regulate and control the speed of travel on pleasure driveways, to exclude traffic teams therefrom and prescribe penalties for a violation of their ordinances. Said section authorizes the commissioners to lay out, extend, maintain and improve pleasure driveways under the provisions of any law authorizing local improvements by cities or villages.

Section 7 authorizes the commissioners to acquire, by gift, grant, devise, purchase or condemnation, lands necessary for constructing, building and maintaining pleasure driveways and forest preserves. They are given power to raise money by general taxation, to borrow money upon the credit of the district and to issue bonds therefor, but they are prohibited from incurring any indebtedness of the district exceeding one percentum of the value of the taxable property as ascertained by the last equalized assessment for State and county purposes. The aggregate amount of taxes levied for any one year, exclusive of the amount levied for payment of interest and principal on bonded indebtedness, cannot exceed the rate of one mill on each dollar.

Section 9 provides for annexation of territory adjoining any forest preserve district to said district. This may be done by filing a petition, signed by not less than ten

per cent of the legal voters residing within the adjoining territory proposed to be annexed, with the county judge, and the question of annexation shall be submitted to the legal voters within the territory proposed to be annexed, at the next general election held in said territory. If a majority of the votes cast at such election upon said question shall be in favor of annexation, such territory shall be annexed and become a part of such forest preserve district.

Section 10 prescribes the duties of the president of the board of commissioners and authorizes him to veto any ordinance, and when an ordinance is vetoed it shall not be effective unless it be again passed by the unanimous vote of all the members of the board.

Section 12 authorizes the board, by gift, devise, dedication, purchase or condemnation, to acquire any land abutting on or in the vicinity of the forest preserve district or pleasure driveway, necessary or appropriate to control the surroundings of such district or pleasure driveway, and the title to land so acquired shall be in fee simple absolute, and shall not terminate or be defeated by abandonment of the use for which it was acquired. The board of commissioners may, by ordinance passed by affirmative vote of all the members, sell and dispose of any lands acquired by it, subject to approval by the board of county commissioners or board of supervisors.

Section 13 authorizes the commissioners to acquire and hold lands for the erection and maintenance thereon of public buildings for the use of the general public for recreation and assembly purposes of a general and not of a religious character, to acquire and hold lands surrounding the said buildings or connected therewith, and to manage, control, improve, maintain and beautify such lands and buildings. Said section 13 further provides: "Any forest preserve district organized under this act shall have power to acquire and hold land for the purpose of protecting and preserving the flora and fauna and scenic beauties of the

State; to protect and preserve such lands as nearly as may be, in their natural condition for the purpose of the education, pleasure and recreation of the public; to provide and maintain all necessary, convenient and appropriate pleasure driveways, paths, and other means of access to such district."

Section 14 repeals a former act, and section 15 is as follows: "This act shall be submitted to a vote of the legal voters of any of the aforesaid districts at any general or special election. The ballots to be used at said election in voting upon this act shall be in substantially the following form:

| For the adoption of an act to provide for the creation and management of forest preserve districts and repealing a certain act therein named. | |
| --- | --- |
| Against the adoption of an act to provide for the creation and management of forest preserve districts and repealing a certain act therein named. | |

If a majority of the legal voters of said district voting on the question at such election shall vote in favor of consenting to this act, the same shall thereupon take effect and become operative at once."

The grounds upon which a reversal of the judgment is asked may be divided into three principal heads: (1) That the act of 1909 violates section 22 of article 4 of the constitution of this State; (2) that the act embraces subjects not expressed in the title, in violation of section 13 of article 4 of the constitution; and (3) that the act of 1909 was never legally adopted and the creation of the district was never legally submitted to the voters of the territory embraced therein.

Counsel for the appellees insist that forest preserve districts are not among the subjects specifically enumerated in section 22 of article 4, and are therefore not within the pro-

hibition against the passage of local or special laws. Section 22 of article 4 prohibits the passage of any local or special law granting special privileges or immunities "to any corporation, association or individual." Conceding that the word "corporation," as there used, means private corporations and not municipal bodies, is the act under consideration discriminative between citizens in that it confers special privileges on some which are denied to others similarly situated? If the power exists in the legislature to authorize the organization of corporations for the preservation of forests, it is necessary to a valid exercise of that power that the benefits of the law shall be available to all citizens similarly situated upon complying with the requirements of the act. The question here involved is not like the question involved in *Wilson* v. *Board of Trustees,* 133 Ill. 443, and *Owners of Lands* v. *People,* 113 id. 296. Those cases held that the formation of sanitary districts and drainage districts was not within the prohibition of section 22 of article 4. The acts authorizing the formation of such corporations were available to the citizens of all localities who desired to avail themselves of their benefits and were willing and able to comply with their provisions. The organization of a district in one locality or part of a county did not preclude the people from organizing districts in other localities or other parts of a county. Those acts did not discriminate against citizens similarly situated. This court, in *Douglas* v. *People,* 225 Ill. 536, quoted from *People* v. *Hazelwood,* 116 id. 319: "Laws are general and uniform, and hence not obnoxious to the objection that they are local or special, when they are general and uniform in their operation upon all in like situation." In *Jones* v. *Chicago, Rock Island and Pacific Railway Co.* 231 Ill. 302, it was said: "By that provision of our constitution (section 22 of article 4) a guaranty is given that all valid enactments of the legislature shall be uniform in their operation upon persons and property, and by it all citizens are assured the equal

protection of the laws of the State." In *Millett* v. *People,*
117 Ill. 294, the court quoted with approval from *Wally's
Heirs* v. *Kennedy,* 2 Yerg. 554: "The rights of every in-
dividual must stand or fall by the same rule or law that
governs every other member of the body politic or land,
under similar circumstances; and every partial or private
law which directly proposes to destroy or affect individual
rights, or does the same thing by affording remedies lead-
ing to similar consequences, is unconstitutional and void."

Appellees argue that the act under consideration does
not authorize any particular individual or set of individu-
als to form a corporation, but simply provides for the cre-
ation and management of public corporations. It is true
the act does not designate any person or persons by name,
but it is as highly discriminative and as unequal in its op-
eration as if it did do so.

A proposed district must be of contiguous territory,
must lie wholly within one county, must contain within its
boundaries one or more cities, towns or villages, and must
be petitioned for by one thousand legal voters residing
within its limits. Subject to those requirements the act au-
thorizes the organization of a forest preserve district em-
bracing any extent in area, not exceeding the limits of the
county. It may consist of one township in a county having
a dozen or more townships, if the one township has the
requisite number of legal voters and contains within its
boundaries one or more cities, towns or villages. When a
district is organized, no matter how small the territory em-
braced within it and how large the territory in the county
outside the district, and no matter how much "flora and
fauna and scenic beauties" there may be in the county not
embraced in the district, no other district can be organized
in that county, for the act expressly provides "that only
one forest preserve district may be created in any county."
There is no requirement in the statute that a forest preserve
district must embrace a forest. Unless such meaning is

given it by implication, a district could be organized of territory containing no forest. While the title of the act indicates it was intended that a district could only be organized where it embraced a natural forest within its limits, yet a reading of the statute leaves it open to grave doubt whether it does not authorize organizing a district in the prairie, without any forest whatever in it. But however that may be, it cannot be denied that if a district must have a forest in it, when one district is organized, however small the forest it contains, and though there may be hundreds or thousands of acres of other forest in the county outside the district, no other district can be organized in that county. It is true, a district may be organized embracing the entire county; but this is not required, and if the requisite number of legal voters of only a part of the county embracing one or more cities, villages or towns petition for its organization into a district it may be so organized. The legislature contemplated that the legal voters of two or more sections of the same county might petition for the organization of their respective territories into a forest preserve district at the same time, for the act provides that if two or more petitions are filed the public hearing upon all petitions shall be set for the same day and hour, and if two or more petitions come on for a hearing at the same time, the county judge may include part or all of the territory described in each petition in one district. Obviously, territory described in two or more petitions could not be included in one district unless such territory was contiguous. If two petitions described territory lying in different parts of the county, not contiguous,—perhaps miles apart,—both tracts could not be organized into one district, and the county judge would be required to decide, arbitrarily, which of the two petitions he would grant. The desirability of "protecting and preserving the flora and fauna and scenic beauties" might be as great in the one case as the other, but the tracts not being contiguous they could not be embraced in one district,

and when one district is organized the power to organize districts in that county is exhausted. Clearly, that would be granting a special privilege and franchise to be enjoyed by the citizens of the locality who were first in securing the organization of their territory as a district and withholding the same privilege and franchise from others situated under like circumstances. In *People* v. *Cooper,* 83 Ill. 585, the court said that it is the substance and not the mere form given to an enactment which must determine its constitutionality. "If the act must necessarily produce a result clearly and unquestionably forbidden by the constitution it cannot be upheld, whatever may be its form or profession." The provision for annexing territory adjoining an organized forest preserve district does not aid the act. Whether such adjoining territory is annexed depends upon whether the owners petition therefor. If they do not choose to do so, territory separated from the district by their lands can not be annexed or organized into another district. We are not unmindful of the rule that the presumptions are in favor of the validity of the law and in a case of reasonable doubt are to be resolved in favor of the act, but here, in our view, there can be no doubt the statute is clearly in violation of both the letter and the spirit of the constitution.

It is further contended that the act violates section 13 of article 4 of the constitution of Illinois, which provides that no act shall embrace more than one subject, and that shall be expressed in the title. In view of the fact that we hold the act is invalid on other grounds it is not essential that we pass upon this question. However, it will not be out of place to discuss the scope of the act and call attention to the subjects which it is claimed are not expressed in its title, and, to say the least, give rise to serious question whether the act does not violate the constitution in the respect claimed.

To the ordinary mind a forest preserve district would mean one organized for the purpose of acquiring, protect-

ing and preserving natural forests. Such a purpose is expressed in section 13 of the act. But section 6 authorizes the board of commissioners to designate the whole or any part of any streets, roads, boulevards or other highways within the limits of such districts for pleasure driveways, to lay out, improve and maintain other pleasure driveways, and to construct roadways for the use of traffic teams when they are excluded from the pleasure driveways. Section 13 gives the commissioners power to acquire and hold lands for the erection and maintenance thereon of public buildings for the use of the public for recreation and assembly purposes. It would undoubtedly have been competent to have provided in the act all reasonable means for carrying out its provisions for organizing and maintaining forest preserve districts. This might reasonably include the building of roads or driveways for going to and from and through the forest the district is organized to preserve. Section 6, however, is unfortunately worded if that was the intention of the act. That section gives the commissioners authority to designate the whole or any part of any road or highway "within the limits of such district" as a pleasure driveway and to improve and maintain the same. By the letter of the act, when a district embraces a county and is organized to preserve a forest in one part of it, power is given the commissioners to designate any, or even all, of the public highways as pleasure driveways and improve and maintain them, although the law giving county and township authorities jurisdiction over public highways is not repealed nor intended to be repealed. The erection of buildings in the forest for shelter and rest may be a reasonable incident to the power to preserve and maintain the forest, but it seems a pretty wide stretch of that power to say it includes the erection of buildings for assembly purposes. A much greater portion of the act, consisting of fifteen sections, is devoted to defining the powers and pre-

scribing the duties of the commissioners with reference to the construction of driveways and buildings than is given to the requirements necessary for protection of forests. If these features to which we have called attention, and others not mentioned, do not bring the act within the constitutional provision that no act shall embrace more than one subject and that shall be expressed in the title, they at least show the question is one of grave doubt.

The act with reference to voting upon its adoption and upon the organization of a forest preserve district presents a curious situation. Section 1 requires the submission of the question of the organization of a forest preserve district to the legal voters of the proposed district. Section 15 provides that in order that the law may go into effect and become operative, the question of its adoption must be submitted to the legal voters "of any of the aforesaid districts" at a general or special election and consented to by a majority of them voting upon that question. If a majority of the votes upon that question are in favor of adopting the law it then takes effect and becomes operative. It is difficult to see how a "district" can vote on the adoption of the act before any district is organized, and it is equally difficult to see how the necessary steps required can be taken for the organization of the district until there is a law in effect authorizing the proceeding. But if all the preliminary steps for the organization of a forest preserve district could be taken before voting upon the adoption of the law and then both questions submitted to be voted upon at the same time, the election in this case would be required to be held invalid.

The question of the adoption of the law was submitted to all the voters of Cook county, but the creation of the proposed forest preserve district was not submitted to any of the voters of said county except those residing in the city of Chicago and the town of Cicero. The ballots voted

by the voters of the city of Chicago and the town of Cicero
were in the following form:

| | |
|---|---|
| For the adoption. of an act to provide for the creation and management of forest preserve districts and repealing a certain act therein named, and creating under said act a forest preserve district, the boundaries of which to coincide with and comprise the whole of the territory of Cook county, Illinois. | ( ) |
| Against the adoption of an act to provide for the creation and management of forest preserve districts and repealing a certain act therein named, and creating under said act a forest preserve district, the boundaries of which to coincide with and comprise the whole of the territory of Cook county, Illinois. | . |

The ballots voted in the rest of the county were in the ·
following form:

| | |
|---|---|
| For the adoption of an act to provide for the creation and management of forest preserve districts and repealing a certain act therein named. | |
| Against the adoption of an act to provide for the creation and management of forest preserve districts and repealing a certain act therein named. | |

It will be seen that the voters in Chicago and the town
of Cicero voted both upon the proposition of adopting the
act and creating a forest preserve district with boundaries
to coincide with the boundaries of Cook county, while all
the rest of the voters of the county voted only upon the
proposition of the adoption of the act.  Appellees contend
that the addition to the ballot of the city of Chicago and
town of Cicero of the proposition of creating a forest pre-
serve district was surplusage and did not affect the legality
of the election.  We do not see how this can be so, for sec-
tion 1 expressly provides that "upon the determination by

said county judge of the territory to be embraced in such district and the name to be given thereto, such county judge shall cause to be entered upon the records of the county court of such county an order fixing and defining the boundaries and the name of such proposed district, and thereupon he shall order to be submitted to the legal voters of such proposed district at any special or general election held therein the question of the creation of such proposed district." The situation is not analogous to an election under the Cities and Villages act for the organization into a city or village of unincorporated territory. The Cities and Villages act is not a referendum statute, and inhabitants of territory desiring to organize under the provisions of said act are only required to vote upon the question of organization. The act itself is effective for all who desire to organize under its provisions, and its operation is not dependent upon a vote for or against its adoption.

Another peculiarity of the act before us is that it does not provide how the question of its adoption may be caused to be submitted to the voters, as is the case with other referendum statutes. Whether that defect is sufficient to render the law inoperative or not, by its plain provisions it cannot take effect until adopted by a vote, and a forest preserve district cannot be created under it except by a vote of the legal voters residing in the district. It seems too plain for argument that a large number of the voters of Cook county having been deprived of the privilege of voting upon the organization of the county into a forest preserve district, the election was illegal and the organization invalid.

The court erred in overruling the demurrer to the plea of appellees and dismissing the information. For that error the judgment is reversed and the cause remanded to the superior court, with directions to sustain the demurrer.

*Reversed and remanded, with directions.*