DWIGHT H. PERKINS, Appellant, *vs.* BOARD OF COUNTY COMMISSIONERS OF COOK COUNTY *et al.* Appellees.

*Opinion filed February 16, 1916.*

1. CONSTITUTIONAL LAW—*Forest Preserve act of 1913 is not an act to regulate county affairs.* The fact that under the Forest Preserve act of 1913 a district may be organized which will embrace an entire county and its affairs be administered by the same officers who conduct and manage the affairs of the county does not make the act one regulating county affairs within the meaning of the constitution, as the conservation of forests and the flora and fauna has not been recognized as a county purpose.

2. SAME—*powers of counties are those prescribed by law.* In Illinois, counties are involuntary municipal corporations organized for the purpose of aiding in the proper administration of the affairs of the State government, and the powers and functions of counties are those prescribed by law.

3. SAME—*legislature may create any kind of corporation to aid in the administration of public affairs.* The legislature may create any kind of a corporation it sees fit to aid in the administration of public affairs and endow such corporation and its officers with such powers and functions as it deems necessary.

4. SAME—*legislature may create two or more public corporations having same officers.* The constitution does not prohibit the legislature from organizing two or more public corporations whose powers and functions shall be exercised by the same officers.

5. SAME—*legislature has full power over office created by it.* An office created by the legislature is wholly within its power, and it may prescribe the powers and duties of the incumbent of such office and the manner of filling it, change the mode or manner of filling the office and impose additional duties upon officers already elected or appointed.

6. SAME—*what does not render Forest Preserve act of 1913 a local or special law.* The facts that forest preserve districts, under the Forest Preserve act of 1913, are confined to the territorial limits of the county in which a natural forest is located, and that the district cannot be organized unless it also contains a city, village or town, do not render the act invalid as a local or special law. (*People* v. *Rinaker,* 252 Ill. 266, distinguished.)

7. SAME—*test in determining whether law is general.* The fact that a law may be, or seem to be, arbitrary in some of its provisions does not make the same a local or special law, but the test is whether the law operates uniformly throughout the State upon

271 — 29

all persons and localities under like circumstances, and if it does the law is general.

8. SAME—*Forest Preserve act of 1913 is not invalid as a special law regulating elections.* The Forest Preserve act of 1913 is not invalid as a special act regulating elections, as the legislature, in providing for forest preserve districts, had the right to provide for the submission of the question of the organization of such a district to the legal voters of the proposed district and to prescribe the manner of conducting the election.

9. SAME—*Forest Preserve act of 1913 not invalid as authorizing tax for private purpose.* Under the Forest Preserve act of 1913 the land acquired by the district becomes the property of the district and its improvement in accordance with the provisions of the act must be regarded as a public purpose, and the act is therefore not invalid as authorizing the levying of taxes for a private purpose nor for a purpose from which the tax-payer receives no benefit.

10. SAME—*Forest Preserve act does not contain matters outside the scope of its title.* The provisions of sections 5 and 6 of the Forest Preserve act of 1913 authorizing the creation of forest preserve districts for "the education, pleasure and recreation of the public" and the laying out of paths, driveways and roadways for the use of the forest preserve by the public, are within the scope of the title of the act and do not render the same invalid. (*People* v. *Rinaker,* 252 Ill. 266, explained.)

11. SAME—*acquiring of lands is germane to the purpose of the Forest Preserve act of 1913.* The acquiring of lands containing natural forests and setting the same aside as forest preserves are germane to the purpose of the Forest Preserve act of 1913 as expressed in its title, as it is not necessary that the title of an act shall minutely and exactly express every related matter which is included in the act.

12. SAME—*what is meant by "subject" of an act.* The "subject" of an act, as that term is used in the constitution, means the matter or thing forming the groundwork of the act, which may include many parts, so long as they are all germane to the act, and which, if traced back, will lead the mind to the subject of the act as the generic head.

13. SAME—*Forest Preserve act of 1913 is not invalid as being incapable of execution.* The Forest Preserve act of 1913, while some of its terms may be open to criticism, is not so indefinite or incapable of execution as to render it invalid, and the question of the wisdom, policy or practicability of the act is not one for the courts to determine.

14. FOREST PRESERVES—*act of 1913 authorizes issuing of bonds.* Section 13 of the Forest Preserve act of 1913 is sufficient to authorize the issuing of bonds for the purpose of creating and managing a forest preserve district.

15. SAME—*ordinance of a forest preserve district for issuing bonds must be published.* Under section 11 of the Forest Preserve act of 1913 an ordinance of a forest preserve district authorizing the issuing of bonds is required to be published, where its effect is to appropriate money in the form of the credit of the district for the payment of the principal and interest of the bonds and to provide for a direct annual tax to produce the funds required.

16. PUBLICATION—*publication of notice in newspaper printed in foreign language is not good.* The publication of a notice or ordinance in a newspaper printed in a foreign language is not good, even though the notice or ordinance is printed in the English language in such newspaper.

APPEAL from the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding.

ELMER M. LIESSMANN, (ALBERT M. KALES, of counsel,) for appellant.

ADOLPH D. WEINER, and FRANCIS A. McDONNELL, (GREGORY & McNAB, and ALBERT S. LONG, of counsel,) for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellant, Dwight H. Perkins, filed his bill in chancery in the circuit court of Cook county against appellees, the Board of County Commissioners of Cook County, the members of said board as individuals, the alleged Forest Preserve Commissioners of the Forest Preserve District of Cook County, Robert M. Sweitzer, county clerk, and Henry Stuckart, county treasurer and *ex-officio* county collector of Cook county, to enjoin the issue, sale and disposition of $1,000,000 worth of bonds of the Forest Preserve District of Cook County, Illinois, issued pursuant to an ordinance of said forest preserve district, and to enjoin any attempt to levy the tax provided for by the ordinance for the pay-

ment of either the principal or interest on said bonds, and the county treasurer from collecting any part of any tax that might be extended on the tax books of the county for the payment of either the principal or interest on such bonds, and to require appellees to cancel or deliver up said bonds so that the same might be canceled and destroyed. A general demurrer was sustained to the bill, and appellant electing to abide by his bill, a decree was entered dismissing the same for want of equity. This appeal followed.

The bill charges that the Forest Preserve act of June 27, 1913, was adopted in Cook county, and that pursuant to said act such proceedings were had in the circuit court of that county that a decree was entered November 30, 1914, organizing the Forest Preserve District of Cook County, having boundaries co-terminous with the boundaries of the territory embraced in that county; that on February 11, 1915, the Board of County Commissioners of Cook County, assuming to act as the Board of Forest Preserve Commissioners of Cook county, adopted an ordinance authorizing $1,000,000 of bonds of the said forest preserve district to be issued and for the levying of a direct annual tax on all of the taxable property in the forest preserve district sufficient to produce a sum each year for paying the interest on all such bonds and the principal of all bonds maturing each year, as provided in such ordinance. A copy of the ordinance was attached to the bill, which recites that for the purpose of creating and managing the Forest Preserve District of Cook County there is authorized to be issued forest preserve district bonds to the amount of $1,000,000, consisting of 2000 bonds of $500 each, dated July 1, 1915, and maturing in amounts of $60,000 each year from 1915 to 1933, inclusive, and $40,000 January 1, 1934, and bearing interest at the rate of four per cent per annum, payable semi-annually, and that there shall be levied a direct annual tax each year sufficient to pay the amount of interest on such bonds and the bonds maturing each year for said years,

the tax to be included in the annual appropriation bill for each of those years, and authorizes the bonds to be sold, from time to time, as proceeds are needed for the purposes authorized by the ordinance, and further provides that the ordinance shall be in force and effect from and after its passage, approval and publication. The bill further charges that the ordinance was published March 12, 1915, in the English language in the *Staats-Zeitung,* a newspaper published in the German language and read only by those of German nationality who adhere to the German language in preference to the language of this country, and was not published in any other newspaper in the county; that the Forest Preserve act of June 27, 1913, is unconstitutional and void in that it conflicts with section 22 of article 4 of the constitution, which prohibits special legislation regulating county and township affairs, and with section 13 of article 4 of the constitution, in that it contains matters not expressed in its title and is indefinite and uncertain in its provisions, and in conflict with section 1 of the fourteenth amendment to the constitution of the United States, in that it denies to the citizens of Cook county equal protection of the laws; also, that the bonds issued are void for the reason that the act provides that all ordinances imposing a fine or penalty or making any appropriation of money shall be published in some newspaper published in such district or having a general circulation in such district, and that the publishing of such ordinance in a newspaper printed in a foreign language is not such publication as the law requires. The bill concludes with a prayer for an injunction restraining the issuing and selling or otherwise disposing of said bonds or any part thereof, or attempting to levy any tax whatever for the payment of either the principal or interest on such bonds; that the county treasurer, as *ex-officio* county collector of that county, be restrained from collecting or attempting to collect any tax that may thereafter be extended on the tax books of the county for the purpose of

raising funds to pay either the interest or principal of such bonds, and that the bonds may be ordered delivered up and canceled, and for such other and further relief in the premises as equity may require. By reason of the constitutional questions involved the appeal is taken direct to this court.

The act in question is entitled "An act to provide for the creation and management of forest preserve districts and repealing certain acts therein named." (Laws of 1913, p. 385.) The substance of its essential provisions which are necessary to an understanding of the questions raised and argued in the briefs is as follows:

Section 1 authorizes the organization of a forest preserve district wherever any area of contiguous territory lying wholly within one county contains one or more natural forests or parts thereof and one or more cities, towns or villages, upon the petition of five hundred legal voters residing within the limits of such proposed district, the petition to be addressed to the circuit judge of the county in which the proposed district lies and to contain a description of the territory intended to be embraced in such district and the name of such district. Upon the filing of such petition in the office of the clerk of the circuit court it is made the duty of the circuit judge to fix upon a day and hour for a public consideration of the petition, which shall not be less than fifteen days after the filing of a petition, and to give notice of such hearing by publication for three successive days in some newspaper having a general circulation in the territory proposed to be embraced in such district, the date of the last publication to be not less than five days prior to the time set for the public hearing at which any property owner in the proposed district may appear and be heard, and that if the judge finds that all of the provisions of the act have been complied with he shall cause an order to be entered upon the records of the court fixing and defining the boundaries and the name of the proposed district in accordance with the prayer of the petition. If more

than one petition is filed in the same county before the time fixed for the hearing on the first petition, the public consideration of the first petition is to be postponed and the hearing on all petitions set for the same day and hour, and if it shall be found that any of the territory embraced in the petitions is included in or contiguous to the territory embraced in any other petition the judge may include all of the territory described in such petitions in one district, and shall fix the name proposed in the first petition as the name of the district and enter an order fixing and defining the boundaries of such proposed district, and order the question of the organization of such proposed district submitted to the legal voters of such proposed district at a general or special election held therein, and provides the manner for giving notice of such election.

Section 2 prescribes the form of the ballot to be used at such election and provides that the returns of the election shall be to the clerk of the circuit court and canvassed by him and a statement of the result entered upon the records of such court, and that if a majority of votes cast in any district upon such question is in favor of organization, such forest preserve district shall be deemed organized under the act.

Section 3 requires courts to take judicial notice of forest preserve districts organized under the act, and provides that its affairs shall be managed by a board of commissioners, consisting of a president and four members to be appointed by the president of the board of county commissioners or chairman of the board of supervisors of the county in which such forest preserve district is situated; that its members shall be legal voters in the district, no more than three of whom shall be of the same political party; that after the appointment of the first board of commissioners such forest preserve district shall be construed in law and equity a body corporate and politic, and as such may sue and be sued, contract and be contracted with, and acquire

and hold real and personal estate necessary for corporate purposes, etc. In case the boundaries of the district are co-extensive with those of any county, city, village, incorporated town or sanitary district, the corporate authorities of such municipality shall exercise the powers and perform the functions and duties of the commissioners provided for in that section, and in such case no commissioners shall be appointed for the district.

Section 4 provides that if any member of the board of commissioners shall remove from the district his office shall become vacant and his successor shall be appointed for the remainder of his term.

Section 5 provides that the district shall have the power to create forest preserves, and for that purpose may acquire and hold lands containing one or more natural forests or parts thereof, for the purpose of protecting and preserving the flora and fauna and scenic beauties within such district, and to protect and preserve the lands as nearly as may be in their natural state, for the purpose of education, recreation and pleasure of the public.

Section 6 provides that the commissioners shall have the power to acquire by gift, grant, devise or purchase, or by condemnation, any and all grounds and lands within the district containing one or more natural forests or parts thereof, for the purpose of creating, laying out and maintaining such forest preserves as they may deem proper or desirable, and to establish, lay out, improve and maintain such convenient and appropriate paths, driveways and roadways in and through such forest preserves as they shall deem desirable or necessary for the use of such forest preserves by the public, and that in all cases where lands are acquired, the title thereto shall be taken in fee simple absolute and not be terminated or defeated by abandonment of the use for which they were acquired, and that any lands so acquired may be sold by vote of all the members of such board, the sale, however, not to become effective until it is

approved by the board of county commissioners or board of supervisors of the county in which such district is located.

Sections 7 and 8 provide that the commissioners shall have power, by ordinance, to regulate and control the speed of travel on all paths, driveways and roadways within the forest preserve, and to pass and enforce all necessary ordinances, rules and regulations for the management of the property and conduct of the business of the district, and to appoint such officers and employees as may be necessary, all of whom, excepting the treasurer and attorney, shall be under the civil service rules and regulations provided for by section 9 of the act, which provides that where the county in which a forest preserve district is located shall be governed by any law regulating civil service, the method of selecting its employees shall be in the manner provided by the law regulating civil service in the county.

Sections 10, 11 and 12 provide for the keeping of a record of all ordinances and proceedings of the commissioners and for the making of annual reports to the board of county commissioners or to the board of supervisors, as the case may be, of the revenues received, expenditures made, land acquired, the progress of construction work, the condition of the property, and such other matters as may have been acted upon during the previous year; that all ordinances imposing a fine or penalty or making any appropriation shall, within ten days after their passage, be published at least once in some newspaper published in the district or having a general circulation therein, and that no such ordinance shall take effect until ten days after it is so published; that all other ordinances and resolutions shall take effect from and after their passage unless otherwise provided. The manner in which the same may be proved and the manner of conducting the meetings of such board of commissioners is also set out.

Section 13 provides that the commissioners of any forest preserve district shall have power to raise money, by

general taxation, for any of the purposes enumerated in the act, and to borrow money upon the credit of the district and issue bonds therefor, provided the amount of the indebtedness, including existing indebtedness, in the aggregate shall not exceed one percentum of the assessed value of the taxable property in the district; that before any bonds are issued the commissioners shall provide, by ordinance, for an annual tax sufficient to pay the interest on such bonds as it falls due and the bonds as they mature; that the bonds shall be divided into series, the first of which shall mature not later than five years after date and the last of which shall mature not later than twenty years after the date of issue; that all general taxes levied by the commissioners shall be levied at the same time and in the same manner as taxes are levied for cities and villages, provided the amount levied in one year shall not exceed the rate of one mill on the dollar, all money collected under the provisions of the act to be paid to the treasurer of such district.

Section 14 provides that any territory adjoining any forest preserve district organized under the act may become a part of such district upon filing with the county judge of the county in which such district is located a petition signed by not less than ten per cent of the legal voters residing within the territory proposed to be annexed, who shall thereupon submit at the next general election held in the territory proposed to be annexed, the question of such annexation; that the vote shall be canvassed in the manner provided for the canvassing of votes upon the question of creating forest preserve districts, and that if a majority of votes cast upon such question shall be in favor of annexation, such territory proposed to be annexed shall become and be a part of such proposed district, and section 15 expressly repeals the Forest Preserve act of May 18, 1905.

It is first insisted that the act in question is invalid as a local or special law regulating county affairs and also as one providing for the opening and conducting of an elec-

tion.   In this connection our attention is called to *People v. Board of Election Comrs.* 221 Ill. 9, in which it was held that when the constitution speaks of affairs of a county it refers to those affairs which affect the people of the whole county and includes all affairs which relate to the county in its organic and corporate capacity, and it is insisted, under the holding in that case, that inasmuch as a forest preserve district may be organized so as to include an entire county, in which event its affairs are to be controlled and managed by the same officers who conduct and manage the affairs of the county, the act in question is one regulating county affairs.   The fact that such district may embrace the entire county and its affairs be administered by the same officers who conduct and manage the affairs of the county does not render the act one regulating county affairs unless the acts performed by such officers in their capacity as commissioners of such forest preserve district are duties and functions which properly belong to the administration of county affairs.   In this State counties are involuntary municipal corporations organized for the purpose of aiding in the proper and more efficient administration of the affairs of State government, and the powers and functions of the officers of counties are prescribed by law.   (11 Cyc. 341-343.)   Counties are purely of a political character and their functions are wholly of a public nature.   They are organized as subordinate agencies of the State government for the purpose of exercising some of the functions of State government, and not exclusively for the common benefit of the citizens or property holders within their boundaries.   In this respect they are distinguishable from other municipal corporations, which are usually voluntary corporations organized primarily for the purpose of endowing the inhabitants of a specified territory with powers of local government for the benefit of the citizens and property owners within their limits.   The conservation of the forests and the flora and fauna lying within their boundaries has not been

deemed one of their proper powers, duties or functions. (Hurd's Stat. 1913, chap. 34, secs. 24-26.) That the legislature might have made them such did not deprive it of the power to create other corporations for such purposes. The power of the legislature in this State to create public corporations is practically unlimited. It may create any conceivable kind of a corporation it sees fit for the more efficient administration of public affairs and endow such corporation and its officers with such powers and functions as it deems necessary and proper for the administration of such corporate powers and affairs. (*People* v. *Bowman,* 247 Ill. 276.) For this purpose it may provide for the organization of corporations which embrace territory situated wholly within or partly within and partly without the boundaries of another municipal corporation. As said in *People* v. *Nibbe,* 150 Ill. 269: "It cannot be doubted that the legislature has the power to authorize the organization of municipal corporations for one purpose, embracing territory situated wholly or partly within the boundaries of another municipal corporation already organized for another purpose." In *People* v. *Bowman, supra,* it is said: "While two municipal corporations cannot have jurisdiction and control, at one time, of the same territory for the same purpose, no constitutional objection exists to the power of the legislature to authorize the formation of two municipal corporations in the same territory at the same time for different purposes, and to authorize them to co-operate, so far as co-operation may be consistent with or desirable, for the accomplishment of their respective purposes." Such is precisely the situation presented here. The legislature has provided by general law for the organization of forest preserve districts whose boundaries may be co-extensive with those of another municipality, such as a county, city, village or town, and that such districts may embrace two or more of such smaller municipalities situated wholly within the boundaries of a county, and that when

they are so organized with boundaries co-extensive with those of such other municipalities, the officers of the latter corporation shall also perform the duties and functions of the officers (commissioners) of such forest preserve district. In making such provision the legislature doubtless deemed that better co-operation would be secured between the two municipalities in that way. The constitution of this State contains no prohibition against the organization of two or more corporations whose powers and functions are to be performed by the same officers, and we are not authorized to declare the act invalid because it contains such provision. In creating municipal corporations the legislature must necessarily provide the officers by and through whom their corporate powers and functions are to be performed. In the matter of creating such offices and providing the manner in which they shall be filled the legislative power is supreme. (11 Cyc. 343.) The law is now well settled in this State that when the legislature creates an office such office is wholly within the power of the legislature creating it, and it may prescribe the powers and duties of the incumbent of such office and the manner of filling the office, and may, from time to time, change the manner or mode by which such office shall be filled. (*Scown* v. *Czarnecki,* 264 Ill. 305; *People* v. *Morgan,* 90 id. 558; *People* v. *Kipley,* 171 id. 44; *People* v. *Loeffler,* 175 id. 585.) The legislature also has the power to impose additional duties upon officers already elected or appointed. (*Jones* v. *O'Connell,* 266 Ill. 443.) It was therefore clearly within the power of the legislature, in providing for the creation of forest preserve districts, to provide the officers by and through whom its powers should be exercised, the manner of their election or appointment, or that such powers and functions shall be performed by some officers already provided for by law. The act in question, therefore, cannot be held invalid, because of these provisions, as one regulating county affairs, any more than it can be held

invalid as one regulating the affairs of cities, villages or towns, whose officers exercise the same powers and functions (as forest preserve commissioners when forest preserve districts are organized with boundaries co-extensive with such municipalities) as the board of county commissioners or supervisors exercise in districts whose boundaries are co-extensive with those of a county. In neither event can such officers be said to be officers of such municipalities when in the discharge of their duties as officers of such forest preserve districts.

Neither do we think the fact that forest preserve districts are confined to the territorial limits of the county in which a natural forest is situated and the organization of such districts is prohibited unless they also contain a city, village or town, renders the act invalid as a local or special law. While it is difficult to see any possible connection between an area of contiguous territory containing one or more natural forests and the desirability of having such district also contain one or more cities, villages or towns, and while the provision confining the district to the county in which such natural forest preserve is situated seems purely arbitrary, still the conditions under which such corporations may be organized and the extent of the territory to be embraced therein are matters so largely for legislative determination that provisions of that character, alone, are not sufficient to render the act invalid as a local or special law. The fact that a law may be, or seem to be, arbitrary and unreasonable in some of its provisions does not render the same a local or special law. The test is, is it a general law and does it operate uniformly throughout the State upon all persons and localities under like circumstances? If it does, it is not obnoxious to the provision of the constitution forbidding the enactment of local or special laws. (*Cummings* v. *City of Chicago,* 144 Ill. 563; *People* v. *People's Gaslight Co.* 205 id. 482; *Wilcox* v. *People,* 237 id. 421.) The act in question is general in its terms and provisions.

It applies alike to all counties in the State similarly situated,—that is, which contain one or more natural forests and a city, town or village; and in case there are several natural forests in the county it permits the organization of as many forest preserve districts in such county as there are forest preserves capable of being organized into districts which contain one or more cities, villages or towns, or the organization of all of the contiguous forest preserves into one forest preserve district or the whole county into such a district, and authorizes the commissioners of such district to lay out and preserve as many of such forests as they may deem desirable or necessary for the public good. In this respect the act is entirely different from the act of 1909, which was held invalid in *People* v. *Rinaker,* 252 Ill. 266, which prohibited the organization of more than one forest preserve district in any one county, wholly regardless of the number of natural forests which it might contain. The reason underlying the decision in that case was, that the desirability of protecting and preserving the flora, fauna and scenic beauty might be as great in the case of one of such forests as in that of another, and that when one such district was organized the power to organize another district in that county was exhausted, so that the act, in effect, granted a special privilege to the citizens of the locality in such county who were first in securing the organization of the territory as a forest preserve district and withheld the same privilege from other citizens of the same county similarly situated, and for that reason, among others, the act of 1909 was held unconstitutional and void as special legislation. But those features have been eliminated from the act in question, so what is there said has no application to the case at bar.

Neither do we think the act can be held invalid as a special act regulating the opening and conducting of elections. The legislature, in providing for the organization of this class of municipal corporations, had a right to provide

for the submission of the question of the organization of such a district to the legal voters of the territory proposed to be embraced in such district, and in so doing it necessarily prescribed the manner of holding and conducting such election. The act in question does nothing more than this, and can no more be held invalid as a special law regulating the opening and conducting of elections, than can the provisions of the City and Village act which prescribe the manner of conducting elections held for the purpose of voting upon the question of the organization of such municipalities or the annexation of one or more of such municipalities to each other. Such laws have been uniformly sustained.

It is next insisted that the act authorizes the levying of a tax for a purpose which is not a public purpose, within the meaning of the law. The cases cited and relied upon as sustaining this contention are *State* v. *Donald*, 160 Wis. 21, and *Deal* v. *Mississippi County*, 107 Mo. 464, neither of which is in point or decisive of the questions here involved. The decision in the Wisconsin case was based upon the peculiar provision of the constitution of that State which prohibited the State from contracting "any debt for works of internal improvement or being a party to carrying on such works," and the further provision that "the legislature shall provide an annual tax sufficient to defray the estimated expenses of the State for each year." It appears that there had been three attempts to amend the constitution of that State by adding to the section regulating internal improvements the further provision that the State might appropriate money for the purpose of acquiring, preserving and developing the water power and forests of the State, which amendments failed to become effective because of irregularities in the manner in which they were attempted to be made. It was there held that the act in question was one creating a debt on account of work of internal improvement and for the purpose of carrying on

the same, and that the provision for the raising of an annual tax sufficient to defray the estimated expenses of the State for each year was a limitation upon the purpose for which the State might levy a tax, and that a tax levied for the purpose of acquiring and keeping up a forest preserve did not constitute a "State expense," within the meaning of that term as used in the constitution, and for those reasons, among others, the act there in question was held invalid.  Our constitution contains no similar provision, and for that reason the case cited is not in point.  In the other case the act in question provided for the payment of a bounty for a period of years to every person planting one or more acres of prairie with any kind of forest trees except black locust and successfully growing and cultivating the same for three years, etc., the bounty to be paid by the county in which the trees were planted and cultivated.  The constitution of Missouri prohibited any county, city or town from lending its aid to or granting public money in aid of any individual, association or corporation or from becoming a stockholder in any corporation, association or company. It also declared "that taxes may be levied and collected for public purposes, only."  It was pointed out that when the trees were planted they became the private property of the land owner planting them, and that there was nothing in the statute that prevented him from collecting the bounty and then cutting the trees and selling them for his private gain.  The trees remaining the property of the land owner, the effect of the act was to assess the property owners of the county for the purpose of paying a bonus for growing trees which ultimately became private property, and the court held the act in conflict with both of the above provisions of the constitution of Missouri and therefore unconstitutional and void.  Such is not the situation presented here, where a forest preserve district is created and a forest preserve acquired pursuant to the provisions of the act, either by gift, purchase or condemnation.  Under the pro-

271 — 30

visions of the act in question the land becomes the property of such forest preserve district, and the tax levied for the purpose of purchasing and maintaining such forest preserve is not expended for the benefit of a private individual. Theoretically, if not actually, the tax-payer receives full compensation for the tax he pays, in the property purchased with the funds so raised by taxation, as it becomes the property of the forest preserve district in which he lives. The act in question, therefore, cannot be said to be one providing for the levying of a tax from which the tax-payer receives no present benefit or for a private purpose, as was the case in the *Deal case, supra.*

The question as to what does and what does not constitute a public purpose is one which is often difficult to determine. All reasonable doubts on the question should be resolved in favor of the legislative declaration of such question and in favor of the constitutionality of the laws enacted with a view of carrying such declaration into effect. (*People v. McBride,* 234 Ill. 146.) As said in the concurring opinion in *State v. Donald, supra:* "The acquisition, preservation and scientific care of forests and forest areas by the State, as well as the sale of timber therefrom for gain, in accordance with the well understood canons of forest culture, is pre-eminently a public purpose. It would be a mere affectation of learning to dwell upon the value to a State of great forest areas. That has been established long since and is not open to question. The lamentable results which have followed the cutting of forests over large areas, the serious effects of such cutting upon climate, rainfall, preservation of the soil from erosion, regularity of river flow, and other highly important things which go to make up the welfare of the State, are matters of history. They need not be descanted upon."

It is further insisted that the act contains matters outside the scope of its title, and for that reason violates that part of section 13 of article 4 of the constitution which·

provides that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The title of the act in question is, "An act to provide for the creation and management of forest preserve districts and repealing certain acts therein named." In this connection it is insisted that the real purpose of the act is to provide places for pleasure, recreation and education for the public, and that the title of the act gives no inkling of what is really intended to be provided for by such act. This contention is based largely upon the provisions of sections 5 and 6 of the act. Section 5 provides that districts organized under it shall have the power to create forest preserves, and for that purpose shall have the power to acquire and hold lands containing one or more natural forests for the purpose of protecting and preserving the flora, fauna and scenic beauties within such district, and for protecting and preserving such lands, as nearly as may be in their natural condition, for the purpose of the education, pleasure and recreation of the public. Section 6 empowers the board of commissioners of any district to acquire grounds and lands within the district by gift, grant, purchase or condemnation, containing one or more natural forests, for the purpose of laying out and maintaining such forest preserves as it may deem proper or desirable, and to lay out, improve and maintain such convenient and appropriate paths, driveways and roadways in and through such forest preserves as it shall deem desirable or necessary for the use of such forest preserves by the public. In *People* v. *Rinaker, supra,* in considering the sufficiency of the title of the act of 1909, which was substantially the same as the title of the act in question, we held the title broad enough to reasonably include the building of roads or driveways for going to and from and through the forest which the district was organized to preserve. The objectionable feature to that act in this respect there pointed out was, that when a district embraces a county and is organized to preserve a forest in one part

of it, power is given the commissioners to designate any, or even all, of the public highways as pleasure driveways and improve and maintain them, although the law giving county and township authorities jurisdiction over public highways was not repealed nor intended to be repealed. That feature is eliminated from the present act, which limits the power of the commissioners to laying out paths, roads and driveways within the limits of the forest preserves in such forest preserve districts.

In this connection it is further insisted that the provision for the creation and management of forest preserve districts is not broad enough to include the power to create forest preserves within such districts and purchase lands for such purpose. The provision for the creation and management of forest preserve districts would necessarily include, as an incident to such purpose, the power to endow such districts with the powers, duties and functions necessary for the accomplishment of the purposes for which such district might be created. The acquiring and setting aside of the natural forests within such districts would be one of the objects, if not the primary object, of the organization of such districts. The acquiring of lands, therefore, containing natural forests and setting the same aside as forest preserves is germane to the purpose of the act as expressed in its title. The "subject" of the act, as that term is used in the constitution, means the matter or thing forming the groundwork of the act, which may include many parts or things, so long as they are all germane to it and are such that if traced back will lead the mind to the subject as the generic head. (*People* v. *Solomon,* 265 Ill. 28.) It is not necessary that the title should minutely and exactly express every related matter which is included in the act, but it is sufficient if all of the provisions are related to the same subject indicated in the title, are a part of it or incident to it, and reasonably connected with or auxiliary to the object or purpose of the act as expressed in its title. (*People*

v. *Sayer,* 246 Ill. 382.)   This may be done by expressing
the title of the act in a brief, general form, such as was
done in this instance, or by so framing the title as to ex-
press the principal features of the act more in detail.   (*Peo-
ple* v. *Sargent,* 254 Ill. 514.)   We think that the acquiring
of forest preserves is sufficiently germane and incident to
the object and purpose of creating forest preserve districts
as to be included within the scope of the title of the act in
question.

It is also insisted that the act violates the section of the
constitution under consideration because section 5 of the
act, which provides for the creation of forest preserves and
that the districts may acquire and hold lands containing one
or more natural forests "for the purpose of protecting and
preserving the flora and fauna and scenic beauties within
such district, and to protect and preserve such lands as
nearly as may be in their natural condition for the purpose
of the education, pleasure and recreation of the public,"
shows the real purpose of the act was to create parks and
pleasure grounds for the public.   While it is undoubtedly
true that if the act is allowed to stand and is carried into
effect the natural forests thereby preserved will have many
of the characteristics of public parks that have been estab-
lished under various laws, still we think that a fair reading
of the whole of its sections shows that the primary purpose
of such districts is to preserve and protect the natural for-
ests, with their flora and fauna, in their natural state or
condition, and that the matters of education, pleasure and
recreation are subordinate to and merely incident to the
preservation of such forests and their scenic beauties in
their natural state.   The purpose of preserving such forests,
with their flora and fauna and scenic beauties, is clearly
expressed, and even if we were to hold that section 5 ex-
presses a two-fold object or purpose,—that is, preserving
the natural flora, fauna and scenic beauties of such forests
and also providing a place of pleasure, recreation and edu-

cation for the public,—this would not render the whole act void. (*People* v. *Solomon, supra.*) Section 13 of article 4 of the constitution provides: "If any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." So, in any event, only so much of section 5 as provides that it shall be for the purpose of education, pleasure and recreation of the public could be held void as not embraced in the title of the act in question.

It is further insisted that the act is invalid for the reason that it is vague, uncertain and indefinite in its terms and incapable of execution. In this connection our attention is called to the criticism made of the act of 1909 in *People* v. *Rinaker, supra,* in providing for the submission of the question of the adoption of the act to the legal voters of the district before any district was organized, and it is insisted that the present act is subject to the same criticism, in that it provides for the submission of the question of the organization of a proposed district to the legal voters of such district before the same is organized. The act of 1909 provided for the submission of the question of the adoption of the Forest Preserve act to the voters of a proposed district, as well as the question of the organization of such proposed district to the legal voters thereof, and what was there said was with reference to the submission of the question of the adoption of the act to the voters of a proposed district before the same had been organized as such district. The present act contains no provision for the submission of the question of the adoption of the act to the legal voters of the proposed district, and what was there said has no application to the act in question. This act provides only for the submission of the question of the organization of a district to the legal voters of such proposed district. In this respect the act provides that the petition filed shall name the proposed district and the territory to be included within its boundaries, and that the

court shall enter an order fixing the name and boundaries of the proposed district as stated in the petition, or when two or more petitions are filed, an order fixing the name in the first petition filed as the name of the entire district, and to fix and determine the boundaries and submit the question of the organization of such district to the legal voters of the proposed district. The proposed district referred to is the one named in the petition or petitions and fixed by the order of court, and the legal voters of such proposed district are those residing within the boundaries of such proposed district as fixed by the order of court, and we think the act cannot be said to be vague, indefinite, uncertain or ambiguous in this respect. Nor would the fact, alone, that the act might be open to such criticism in some of its provisions render it void so long as it did not infringe some constitutional provision and was capable of execution in its more essential provisions. But few, if any, laws are ever enacted which are not subject to some criticism or are incapable of some improvement. The question as to whether or not a better law might have been enacted is for the legislature and not the courts, and criticisms against the wisdom, policy or practicability of a law are subjects for legislative consideration and not for the courts. (*Harding* v. *Durand,* 138 Ill. 515.) The sole question before the court is, is the law as enacted constitutional and capable of enforcement? If so, it is its duty to sustain the law. (*Town of Cicero* v. *Haas,* 244 Ill. 551.) All presumptions are in favor of its constitutionality. As said in *People* v. *Thompson,* 155 Ill. 451, on page 464: "The presumptions are in favor of the constitutionality of a law passed by the legislature, and the courts will, if possible, give it such a construction as will enable it to have effect. (*Lane* v. *Dorman,* 3 Scam. 238; *Newland* v. *Marsh,* 19 Ill. 376; Cooley's Const. Lim.—6th ed.—pp. 216-218.) This rule is so familiar and of such uniform application as to need no elaboration. It is sustained by an unbroken line of authori-

ties. (*Hawthorn* v. *People,* 109 Ill. 302; *People* v. *Nelson,* 133 id. 565, and cases cited; *Gaines* v. *Williams,* 146 id. 450, and cases cited.)   In the last of these cases, following the statement of the rule as stated by the Supreme Court of Pennsylvania, Mr. Chief Justice Bailey said: 'The right of the judiciary to declare a statute void and arrest its execution is one which in the opinion of all courts is coupled with responsibilities so grave that it is never to be exercised, except in very clear cases.'—*Wellington* v. *Petitioners,* 16 Pick. 87; *Ogden* v. *Saunders,* 12 Wheat. 213; *Parker* v. *State,* 133 Ind. 178; *Munn* v. *Illinois,* 94 U. S. 113; *Pennsylvania Railroad Co.* v. *Riblet,* 66 Pa. St. 164; *Railway Co.* v. *Smith,* 62 Ill. 268." In our judgment the law in question is constitutional and must be sustained.

It is further insisted that the act confers no authority upon the commissioners of a forest preserve district to issue bonds for the purpose for which the bonds in question were proposed to be issued, and that the bonds issued are void for the reason that the ordinance authorizing their issuance was not published in the manner required by law and by the provisions of said ordinance. The ordinance provided that it should be in force from and after its passage, approval and publication. It is admitted that the only publication made of the ordinance was in the English language in a newspaper published in the German language, and that no publication was made of the same in a newspaper published in the English language. Section 13 of the act provides: "The board of commissioners of any forest preserve district organized hereunder shall have power to raise money by general taxation for any of the purposes enumerated in this act, and power to borrow money upon the faith and credit of such district and to issue bonds therefor." We think the provisions of this section of the statute were sufficient to authorize the issuance of bonds for the purpose of creating and managing the Forest Preserve District of Cook County as provided by this ordinance.

As to the further contention that the ordinance was not properly published, the question is presented both as to the necessity and sufficiency of the publication of the ordinance. Section 11 of the act provides: "All ordinances imposing any fine or penalty or making any appropriation of money, shall within ten days after their passage, be published at least once in some newspaper published in such district or having a general circulation therein to be designated by the board of commissioners, and no such ordinance shall take effect until ten days after it is so published. All other ordinances and all orders or resolutions shall take effect from and after their passage unless otherwise provided therein." As said before, the ordinance in question provides that it shall be in force from and after its passage, approval and publication. Appellees insist that publication was unnecessary, and that it is therefore immaterial whether or not the ordinance was published in the manner contemplated by law. With this contention we do not agree. The ordinance, by its terms, was not to become effective until published. Where the ordinance provides that it shall go into effect upon compliance with certain conditions or on the happening of certain contingencies the ordinance will not become effective until the happening of such contingencies. We are further of the opinion that the ordinance was one which was required to be published, under the provisions of section 11 of the act. Section 1 of the ordinance provides that for the purpose of creating and managing the Forest Preserve District of Cook County there are hereby authorized to be issued forest preserve district bonds to the amount of $1,000,000, consisting of 2000 bonds of the denomination of $500 each, to be dated July 1, 1915, and bearing interest at the rate of four per cent per annum, payable semi-annually. Section 3 provides that for the purpose of paying the principal and interest of bonds, respectively, as they become due, there shall be levied and collected a direct annual tax sufficient to produce the amount

required to be raised each year for the purpose of paying the principal of bonds maturing in such year and the interest on all outstanding bonds. We think a fair construction of this ordinance is that it appropriates $1,000,000 in form of credit of the district for the purpose of creating and managing such forest preserve district, and the further sum required each year to pay the interest on all of such bonds issued and the principal of all bonds maturing each year, and, therefore, that it is, in effect, an ordinance appropriating money within the meaning of section 11 of the act, and is required to be published by the terms of that section.

As to the character of the newspaper in which such publication may be made, section 18 of the schedule of the constitution of 1870 provides that "all laws of the State of Illinois, and all official writings, and the executive, legislative and judicial proceedings, shall be conducted, preserved and published in no other than the English language." In *City of Chicago* v. *McCoy,* 136 Ill. 344, we held that this provision of the constitution was permanent in its character, scope and operation and applied to all official writings subsequent to the adoption of the constitution; that ordinances of a city are local laws and in a sense laws of the State, and as such within the spirit and intention of this constitutional inhibition. In *Attorney General* v. *Hulcluse,* 113 Mich. 247, a statute required notice of the meeting of the board of review to be published in a newspaper published in the city. In that case the notice was published in a Swedish paper, and in passing upon the sufficiency of such publication the court said: "The provision does not mean newspapers printed in a foreign language. The English language is the recognized language of this country, and whenever the law refers to publication in newspapers it means those published in the language of the country. In *Graham* v. *Kind,* 50 Mo. 23, it was held that 'when notices are to be published in a paper, an English paper is always intended unless it was expressed to be otherwise.' This

case was approved in *Schaale* v. *Wasey,* 70 Mich. 419, (38 N. W. Rep. 317,) where a notice published in English but in a newspaper published in a foreign language was held void." We think the rule there announced is the one which conforms to the spirit and intent of our constitution and laws. The object of requiring publication of such ordinances in a newspaper having a general circulation in the municipality in which it is to become effective is in order that its provisions may become known to the inhabitants of such municipality. The primary meaning of the word "publish" is "to make known." (32 Cyc. 259; *State* v. *Orange,* 54 N. J. L. 111.) A notice or ordinance published in the English language in a newspaper printed in a foreign language cannot be said to be "published," in the sense in which that word is used in the constitution and laws of this State. Ordinarily such publications are taken and read only by those who understand and read the language in which the publications are printed and who do not readily understand and read the English language. If we were to hold that it is proper to print such a notice in the English language in a newspaper published in the German language, we cannot perceive why it would not be proper to publish it in a newspaper published in some other foreign language, such as the Italian, Spanish or French language, which would be read but by a small portion of the inhabitants of that community and but a few of whom understand the English language. For these reasons we must hold that the ordinance in question was void for want of due publication and the bonds issued pursuant thereto are illegal and void, and that the tax levied for the purpose of paying the same should be enjoined.

For these reasons the decree of the circuit court will be reversed and the cause remanded to that court, with directions to overrule the demurrer to the bill and for further proceedings consistent with this opinion.

*Reversed and remanded, with directions.*