## THE PEOPLE *ex rel.* Peter W. Harts

*v.*

## CHARLES E. LIPPINCOTT, Auditor, etc.

1. CONSTITUTION OF 1870—*construction.* The first fiscal quarter contemplated by the provisions of section 18, article 4, of the constitution of 1870, did not end until the adjournment of the session of the General Assembly whose members were elected at the regular election in 1872, that being the next regular session after the adoption of the constitution.

2. Sections 3 and 4 of the act of February 12, 1849 (Sess. Laws 1849, p. 77), are in the nature of standing appropriations for the purposes therein specified, and they did not expire by constitutional limitation until the end of the first fiscal quarter after the adjournment of the regular session of the General Assembly which commenced in January, 1873.

3. STATE INDEBTEDNESS.—*right of creditor to Auditor's warrant.* If the State has received the services or property of an individual under a contract, there would seem to be no doubt that it would be the duty of the Auditor to draw a warrant for the sum due, and of the Treasurer to countersign it and deliver it to the person entitled to receive it, whether there be money in the treasury or not. Hence it is not a sufficient answer to a petition for a *mandamus* to compel the Auditor to issue such warrant, to say that there is no money in the treasury with which to pay it if issued.

This was an application to this court for a writ of *mandamus* to compel the Auditor of State to draw his warrant on the treasurer in payment of a claim held by the relator, against the State, for stationery furnished for the use of the office of the Secretary of State.

Messrs. STUART, EDWARDS & BROWN, for the relator.

Mr. JAMES K. EDSALL, Attorney General, for the respondent.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The relator applies to this court for a *mandamus* against the Auditor of State, commanding him to draw his warrant on the Treasurer, in favor of the relator, for the sum of $3943.90, on account of books and stationery furnished for the use of the office of the Secretary of State, for the years 1869, 1870, 1871 and 1872. The items of account, together with the certificate of the correctness thereof, the approval of the Governor, and the certificate to the Auditor, in the usual form upon which his warrants for similar expenditures are drawn, as shown by the certificate of the Secretary of State, appear as exhibits attached to the petition. It appears, also, from the petition, that the certificate of the items and account, and approval by the Governor, have been regularly filed with the Auditor, warrant demanded by the relator, and refused by the Auditor, for the reason and upon the ground that all acts of appropriation heretofore passed by the General Assembly, out of which the claim might have been paid, except the 3d and 4th sections of the act of February 12, 1849 (Session Laws of 1849, p. 77), have either been fully exhausted and paid out upon other claims or demands to which such other appropriations were applicable, or that such other acts of appropriation have expired by constitutional limitation.

There is a demurrer to the petition, and also a stipulation by the Attorney General and the attorneys for the relator, that the case may be heard in this division, at the present term, and that, if the court shall be of opinion that the relator is entitled to the warrant, on the facts stated in the petition, the mandate therefor may be issued immediately.

The 3d and 4th sections of the act of February 12, 1849, under which the relator claims that he is entitled to have the warrant issued, are as follows:

"SECTION 3. The incidental expenses of the offices of the Auditor of Public Accounts, State Treasurer and Secretary of State, shall include postage on all public papers sent by mail to or from said officers, relative to the business thereof, furni-

ture for the same, the necessary fuel, and all such books, blanks and other stationery as shall be considered necessary for the convenient transaction of business in said departments, respectively.

"SEC. 4. For the purpose of defraying the incidental expenses aforesaid, it shall be the duty of said officers, respectively, from time to time, as said expenses may be incurred, to lay proper vouchers for the same before the Governor, whose duty it shall be, if such accounts appear to be reasonable, to allow the same, and to certify the amount thereof to the Auditor, who shall thereupon be required to issue his warrant for the same to the person entitled thereto, to be paid out of any moneys in the treasury not otherwise appropriated."

The objection urged against these sections by the Attorney General, on behalf of the Auditor, is, that they were repealed by the adoption of the constitution of 1870, being, as he claims, in conflict with the following portions of section 18, article 4, of that instrument:

"Each General Assembly shall provide for all the appropriations necessary for the ordinary and contingent expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session of the General Assembly; * * * * and all appropriations, general or special, requiring money to be paid out of the State treasury from funds belonging to the State, shall end with such fiscal quarter."

The same question was before this court in *The People ex rel.* v. *The Auditor*, 64 Ill. 256, and decided adversely to the position assumed in the present objection. It was there held that the fiscal quarter contemplated in these provisions did not end until the adjournment of the session of the General Assembly whose members were elected at the regular election in November, 1872, that being, in the language of the constitution, "the next regular session" after the adoption of the constitution. It is unnecessary to repeat the line of argument by which that conclusion was reached, or to attempt to add to its force. It must be accepted as the construction given

by this court to those provisions, and conclusive against the objection now urged.

The objection that there is no money in the treasury from which the relator's warrant, if drawn, can be paid, is fully answered by *The People ex rel. v. The Secretary of State*, 58 Ill. 94, and what was there said, in this respect, applies with equal force to the present case. The court said: "If the petition was, alone, for a writ to compel the payment of the money by the treasurer, then the answer would be a bar to the relief; but the prayer is, that the Auditor issue, and the Treasurer countersign and pay, a warrant for the amount petitioner is entitled to receive. If the State has received the services or property of an individual under a contract, there would seem to be no doubt that it would be the duty of the Auditor to draw a warrant for the sum due, and of the Treasurer to countersign it and to deliver it to the person entitled to receive it, whether there be money in the treasury or not for its payment. This the law, at least, requires, and also that it be paid when funds are provided for that purpose. If there is no money in the treasury for the payment of a proper claim when the warrant issues, it should be paid when there are funds."

The sections of the act of February 12, 1849, which we have quoted, are in the nature of standing appropriations for the purposes therein specified, and they embrace the relator's claim. Since, therefore, it must be held, on the authority of *The People ex rel. v. The Auditor, supra*, that they did not expire by constitutional limitation until the end of the first fiscal quarter after the adjournment of the regular session of the General Assembly which commenced in January, 1873, it follows that the relator should be paid whenever there are funds in the treasury which may be lawfully used for that purpose. He is, then, entitled to the writ of *mandamus*, as prayed for in his petition, and it is ordered to be issued accordingly.

*Mandamus awarded.*