. (No. 11135.—Reversed in part and remanded.)
THE PEOPLE *ex rel.* Henry Stuckart, County Collector, Appellee, *vs.* MARK L. DAY, Appellant.

*Opinion filed February 21, 1917—Rehearing denied April 6, 1917—*
*. Appellant's petition denied April 17, 1917.*

1. TAXES—*publication of the Cook county appropriation bill in*
*a German newspaper does not satisfy the statute.* A publication,
although in English, of the annual appropriation bill of the board
of county commissioners of Cook county in the *Illinois Staats-*
*Zeitung,* a newspaper published in the German language, is not a
compliance with section 18 of the schedule of the constitution nor
with paragraph 6 of section 61 of the statute relating to the gov-
ernment of Cook county, and a county tax levy based on such ap-
propriation bill is void.

2. SAME—*when publication is required the necessity of publi-*
*cation cannot be dispensed with.* The requirement of paragraph 6
of section 61 of the statute relating to the government of Cook
county, that the appropriation bill of the county board be pub-
lished, is to safeguard the interests of tax-payers so that they may
know whether the amounts to be raised are lawful and proper, and
the fact that such charges are lawful or that the county keeps with-
in the limit of taxation for all purposes cannot operate to dispense
with the necessity of publication.

3. SAME—*provision of constitution requiring any municipality*
*issuing bonds to provide for annual tax controls any statutory di-*
*rection.* Section 12 of article 9 of the constitution, requiring any
municipality issuing bonds to provide for a direct annual tax to
pay the interest as it falls due and to pay the principal within
twenty years, imposes a legal obligation enforcible by *mandamus,*
is self-executing and controls any statutory direction, so that a
municipality which has complied with such provision may levy and
collect the tax although it is not included in the annual appro-
priation bill required by statute.

4. SAME—*Firemen's Pension Fund act of 1915 and Police Pen-*
*sion Fund act for city of Chicago do not amend Tax Reduction act.*
The Firemen's Pension Fund act of June 29, 1915, and the Police
Pension Fund act for the same year, for the city of Chicago, pro-
vide for a new and additional tax not within the terms of the Tax
Reduction act and are not amendatory of that statute.

5. SAME—*taxes for the Sanitary District of Chicago must be*
*levied by ordinance published according to statute.* By section 5
of the statute creating the Sanitary District of Chicago, appropri-
ations for the purposes of the corporation must be made by ordi-

nances passed by the board of trustees and published at least once in a newspaper published in the district, and if not so published the tax levy is void as to taxes levied for the general corporate purposes of the district.

6. SAME—*when tax to pay salaries and charges is valid.* Under the proviso to paragraph 6 of section 61 of the statute relating to the government of Cook county, a tax to pay salaries or other charges imposed by law upon the county without any action of the board of commissioners is valid, even though the appropriation bill in which such tax is included was not published as required by law.

7. CONSTITUTIONAL LAW—*meaning of terms "local" and "special," as used in section 22 of article 4 of constitution.* The term "local," as applied to legislation in section 22 of article 4 of the constitution, means such legislation as relates to a portion, only, of the State, while the word "special" refers to such legislation as grants some special right, privilege or immunity or imposes some particular burden upon a portion of the people of the State.

8. SAME—*section 7 of article 10 of constitution authorizes laws to manage Cook county affairs separately.* Section 7 of article 10 of the constitution, providing that the county affairs of Cook county shall be managed by a board of commissioners elected from the city of Chicago "in such manner as may be provided by law," authorizes the legislature to enact laws providing for the management of Cook county affairs separately from other counties, as the words "in such manner as may be provided by law" refer to the entire section, and not only to the manner in which the commissioners are to be elected.

9. SAME—*statutory provision for publication of Cook county appropriation bill is not invalid.* The provision in paragraph 6 of section 61 of the statute for the government of Cook county, that the annual appropriation bill of the board of commissioners shall be published in some newspaper of the city of Chicago, does not unlawfully discriminate in favor of the publishers or people of that city and against the publishers and people in other parts of Cook county, and is a valid enactment.

10. SANITARY DISTRICTS—*when tax to pay bonds and interest is valid.* If the Sanitary District of Chicago, at the time of incurring an indebtedness, has made provision for a direct annual tax to pay the interest on the debt and the principal thereof within twenty years, a tax to pay the principal of maturing bonds and for accrued interest is valid, even though the appropriation ordinance providing for such tax, with other taxes for general corporate purposes, is void for want of proper publication.

11. EVIDENCE—*burden is upon objector to show tax is invalid.* One objecting to a tax to pay maturing bonds and accrued inter-

est has the burden of overcoming the collector's *prima facie* case by showing that provision was not made, at or before the time of incurring the indebtedness, for a direct annual tax to pay the principal and interest.

APPEAL from the County Court of Cook county; the Hon. JOHN H. WILLIAMS, Judge, presiding.

CHURCH, SHEPARD & DAY, (FRANK L. SHEPARD, of counsel,) for appellant.

MACLAY HOYNE, State's Attorney, (SAMUEL A. ETTELSON, Corporation Counsel, CHARLES CENTER CASE, JR., FELSENTHAL & WILSON, WILLIAM F. STRUCKMANN, EDMUND D. ADCOCK, ROSS C. HALL, WALTER E. BEEBE, LEON HORNSTEIN, and JOSEPH F. GROSSMAN, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, Mark L. Day, a tax-payer of Cook county, city of Chicago and the Sanitary District of Chicago, paid the taxes levied upon his property for the year 1915 except the county tax, the sanitary district tax, the forest preserve tax and twelve cents on each $100 of the assessed value of his property levied by the city of Chicago, and the county collector applied to the county court of Cook county for judgment and order of sale for the unpaid taxes. Objections were filed by the appellant, and the county court sustained objections to the forest preserve district tax and that part of the county tax levied for parents' pension fund and refused judgment for those taxes, but overruled all other objections and entered judgment accordingly, with an order of sale to satisfy the same.

An objection to the county tax, so far as it was based on the annual appropriation bill, was that the appropriation bill was not published as required by law. Paragraph 6

277 — 35

of section 61 of the statute relating to the government of Cook county by a board of county commissioners, (Laws of 1905, p. 135,) contains the following provisions: "Said board of commissioners shall, within the first quarter of each fiscal year adopt a resolution, to be termed the annual appropriation bill, in and by which resolution said board shall appropriate such sums of money as may be necessary to defray all necessary expenses and liabilities of said Cook county, to be by said county paid or incurred during and until the time of the adoption of the next annual appropriation bill under this section. * * * . Said appropriation bill shall specify the several objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose. * * * Such appropriation bill shall not take effect until after it shall have been once published in a newspaper published in Chicago, and said board shall provide for and cause said appropriation bill to be published as aforesaid."

On February 26, 1915, the board of commissioners of Cook county adopted the annual appropriation bill for that year, in which were specified the several objects and purposes for which appropriations were made and the amount appropriated for each object or purpose. On March 3, 1915, the board caused the appropriation bill to be published in the *Illinois Staats-Zeitung,* a newspaper published in the German language in the city of Chicago having a morning edition under the name of *Morgenblatt* and an evening edition under the name of *Chicago Freie Presse,* and the appropriation bill was not otherwise published. The paper had a circulation of about 48,000, and the appropriation bill was printed in English in the German paper. A copy of the issue in which the publication was made was admitted in evidence, and by agreement a photographic copy, of the actual size of the paper, has been substituted and is a part of the record. The information usually contained in a newspaper, the news received from the Associ-

ated Press or furnished by correspondents, and news items gathered by local reporters, were in German. The news furnished by the Associated Press was translated from English into German and published in that language, and editorials were in the German language but were sometimes afterward translated into English, and sometimes there were editorials published in English, only. The circulation of such a paper was necessarily limited, in the main, to persons reading the German language, and that sort of publication is not a compliance with section 18 of the schedule of the constitution nor with the statute providing for publication to furnish information to citizens generally. (*Perkins* v. *Commissioners of Cook County,* 271 Ill. 449.) On May 10, 1915, the county board adopted a resolution levying a tax based on the appropriation bill after deducting the estimated revenue from sources other than a tax levy. If the statutory provision is valid the appropriation bill was never in effect and the tax based upon it was void. *Riverside Co.* v. *Howell,* 113 Ill. 256; *People* v. *Florville,* 207 id. 79; *People* v. *McElroy,* 248 id. 574; *People* v. *Read,* 256 id. 408; *People* v. *Chicago, Burlington and Quincy Railroad Co.* 266 id. 150.

To meet the objection to the county tax it is argued that the requirement for the adoption of an annual appropriation bill is void because it is a local and special law regulating the affairs of Cook county and is prohibited by section 22 of article 4 of the constitution. The term "local," as applied to legislation, means such legislation as relates to a portion, only, of the State, while the word "special" refers to such legislation as grants some special right, privilege or immunity or imposes some particular burden upon a portion of the people of the State. (*People* v. *Wilcox,* 237 Ill. 421.) It is argued that the requirement in question is both local and special, because, first, it provides for making known to the inhabitants of Cook county the objects and purposes for which appropriations are made by the county

board and the amount appropriated for each object or purpose, thereby conferring upon the inhabitants of that county benefits and privileges not enjoyed by the inhabitants of other counties; second, it confers power of taxation to cause appropriation bills to be published, and thereby imposes on tax-payers of Cook county burdens not imposed on the tax-payers of other counties; third, it compels Cook county to resort to tax anticipation warrants and to taxation to meet heavy incidental expenses thereby occasioned while other counties are not so constrained; fourth, it is in conflict with section 9 of article 10 of the constitution, because it deprives the circuit court of constitutional powers to determine the number of deputies and assistants of county officers; fifth, it is in conflict with section 12 of article 9, providing that when a county shall issue bonds it shall provide for a direct annual tax sufficient to pay the principal and interest as the bonds fall due, and therefore the levy for the payment of principal and interest on the bonds was valid; sixth, it confers special privileges upon the residents of Chicago to the exclusion of the residents of Cook county outside of Chicago by requiring publication in a newspaper in Chicago; seventh, it is contrary to section 22 of article 4, because it gives to publishers of newspapers in Chicago exclusive privileges to contract for the publication of the appropriation bill; eighth, it violates section 2 of article 2 of the constitution, which provides that no person shall be deprived of life, liberty or property without due process of law, and the fifth and fourteenth amendments to the constitution of the United States, affording like protection to the citizen.

This is a formidable array of alleged efforts of the General Assembly to undermine the constitution and to break down its guaranties for the purpose of informing the tax-payers of Cook county for what purposes and objects the moneys to be exacted from them by taxation are to be expended and the amount to be devoted to each purpose.

Some of the objections are intrinsically of little importance and substantially neutralize each other, one being that the statute imposes upon the tax-payers the unjust burden of bearing the cost of publication for the sake of the information, and another, perhaps as a counterbalance, that it gives to the tax-payers the privilege of information denied to tax-payers of other counties. Most of the objections, however, whether substantial or unsubstantial, may be disposed of on one general ground.

It is true that, except as modified by section 7 of article 10 of the constitution, the General Assembly is prohibited from passing local or special laws regulating county affairs. (*Devine* v. *Commissioners of Cook County*, 84 Ill. 590; *Knopf* v. *People*, 185 id. 20.) That section provides for a different management of the county affairs of Cook county from any other county in the State, as follows: "The county affairs of Cook county shall be managed by a board of commissioners of fifteen persons, ten of whom shall be elected from the city of Chicago, and five from towns outside of said city, in such manner as may be provided by law." If that section, in any sense or to any degree, authorizes a different regulation of the county affairs of Cook county from such regulation as to other counties, any statute enacted in pursuance of it would be valid. It does regulate county affairs to the extent of providing that the corporate powers shall be exercised by a county board instead of a board of supervisors, as in counties under township organization, to which class Cook county belongs.

It is argued that although the affairs of Cook county are to be managed by a board of commissioners they must be managed in precisely the same way as boards of supervisors manage the affairs of their counties, and that the words "in such manner as may be provided by law," relate only to the manner in which the commissioners shall be elected. If that were so the tax in question would be void for the reason that the board of commissioners did

not follow the methods pointed out for boards of supervisors. At the close of each annual, regular or special meeting of the boards of supervisors they are required to publish in one or more newspapers in the county a statement of their proceedings, in which shall be set forth every account audited or allowed, the amount allowed and the amount claimed, and, within thirty days after the annual September meeting, to make a full and accurate statement of receipts' and expenditures, and of each item, with an accurate statement of the finances of the county, including all debts and liabilities, of every description, and the assets and other means to discharge the same, and within thirty days to cause the same to be posted at the court house and two other places in the county and to be published for one week in a newspaper in the county, if there is one. The methods provided for levying a tax were not followed by the board of commissioners. There is no good ground, however, for limiting the words in question to the manner of conducting elections for county commissioners, but the words refer to the entire section, including the management of the county affairs in the manner provided for by law. To manage the county affairs means to control, regulate, direct or conduct the affairs of the county, and the provision for adopting an appropriation bill and publishing the same is a direction as to the management of county affairs.

No discrimination is made by imposing on Cook county the necessity of issuing tax anticipation warrants, as contended by counsel, since that is not a necessary result of the act, but may, perhaps, result from a disobedience of it, which would happen to any other county from a like disregard of the law.

The argument that the act violates the prohibition of the State and Federal constitutions against deprivation of life, liberty or property without due process of law is on the ground that liberty of contract is a property right, and that it is unlawful to single out publishers of newspapers in

Chicago to the disadvantage of publishers in other localities of the county. The evident object of the provision was to require publication in a newspaper that would inform the people, and not either to enrich the publishers of Chicago nor to impoverish the publishers of the papers in small localities or remote places. It is not a statutory right of every publisher of a newspaper in a county to publish ordinances or proceedings of municipal bodies. The suggestion that the act provides for informing the tax-payers of Chicago of the appropriations and excludes the residents outside, and thereby confers a special privilege upon residents of Chicago, has no foundation in fact, the purpose of publication being to spread the information as widely as possible.

The statute does not deprive the circuit court of power to fix the number of deputies and assistants of clerks of courts of record, treasurer, coroner and recorder of deeds. In fact, the number had been fixed at the time the appropriation bill was adopted, and the question whether an increase of judges or such deputies and assistants after the adoption of the appropriation bill would justify an additional tax is not involved in the question whether the requirement of publication violates the constitution.

If a tax may be levied to pay interest and principal on bonds without including the amount in the annual appropriation bill if provision was made for a direct annual tax to pay the same when the bonds were issued, the validity of the requirement to publish the appropriation bill is in no manner affected thereby.

The statute is not subject to any constitutional objection.

It is argued that, even assuming the statute requiring publication to be valid, there were appropriations as to which publication could serve no useful purpose and for which the tax levy was legal. It is not material how or by what authority expenditures are authorized or whether

they are fixed and certain in their nature or not. The requirement that the appropriation bill shall be published was enacted to safeguard the interests of the tax-payers so that they may know whether the amounts raised are lawful and proper, and the fact that the charges are lawful can make no difference. The salaries of clerks of the courts of record, the treasurer, coroner and recorder were fixed and yet the appropriation bill appropriated money for the payment of those salaries, although they are not payable by the county but are payable only out of the fees of the office actually collected. (*People* v. *Toledo, St. Louis and Western Railroad Co.* 266 Ill. 112; *People* v. *Illinois Central Railroad Co.* 271 id. 236.) Those officers may perform services for the county for which a statute allows them fees, and the county may lawfully appropriate money to pay the same, but no appropriation can be made for the payment of salaries. The appropriation bill also included the salaries of the State's attorney and his assistants, which are payable out of the fees and earnings collected, and the county could not appropriate money except for a deficiency of such fees and earnings available for the payment. In the beginning of the appropriation bill there was an estimate of resources of the county, in which was included a comparatively small amount for fees, fines, forfeitures and penalties, distributable according to the statute, but an appropriation was made for the total salaries, amounting, with special counsel and expenses, to $244,105. It was not lawful to set down the fees, fines, forfeitures and penalties as estimated resources of the county, applicable to ordinary corporate purposes.

Counsel for the county admit that there is no authority of law to pay any portion of the salaries of the treasurer, recorder, sheriff, coroner and clerks of courts of record out of moneys collected by taxation, but it is argued that the illegal appropriation and levy were not unlawful because the levy did not reduce the tax rate below the statutory

limit. As we understand counsel, their position is that because the county kept within the limit of taxation for all purposes no harm was done; but the county board is not authorized to levy taxes up to the limit for purposes prohibited by law, nor to levy taxes for illegal purposes. It is within the power of the General Assembly to create charges upon counties and to require their payment without the action of the county authorities. (*People* v. *Power,* 25 Ill. 169.) And for the purpose of requiring payment of such charges a proviso was added to the sixth paragraph of section 61, as follows: "Nor shall anything herein contained be construed to deprive the board of power to provide for and cause to be paid from the county funds any charge upon said county imposed by law, without the action of the board of commissioners, including fixed salaries of officers required by law to be paid from the county treasury, and to pay jurors' fees and other charges fixed by law." That proviso was under consideration in the case of *People* v. *Raymond,* 186 Ill. 407, where it was held that the General Assembly could make the compensation of shorthand reporters appointed by the judges of the circuit courts a charge upon the county without the action of the board of county commissioners. That proviso relates only to charges imposed upon the county by statute and required to be paid from the county treasury without action of the board of commissioners, either in fixing the amount of the charge or otherwise. The proviso expressly includes salaries fixed by the law and required to be paid from the county treasury, together with jurors' fees and other charges fixed by the law. Such charges are excepted by the proviso from the requirement that they shall be included in an annual appropriation bill, and the county board is required to provide for their payment, but the record does not sufficiently separate and identify such charges to enable the court to determine the aggregate amount of the same. The resolution levying the tax first recited the appropriations in the words, figures and

characters of the appropriation bill, aggregating $11,017,-
349.82, and then levied a tax of $1,184,337.50 to pay prin-
cipal and interest on bonds. It then recited that there were
estimated receipts other than from the tax levy, and ordered
a levy of $6,019,899,79 for the purpose of paying *pro rata*
the items of the appropriation not met by other receipts,
making a total tax levy for all purposes of $7,204,237.29.
The *pro rata* share of the charges fixed by law which are to
be paid from the tax levy is therefore to be determined ac-
cording to the relative proportion of the tax levy and the
other receipts of the county. The tax levy was to pay a
proportion of the whole appropriations and is valid to the
extent of such proportion of the charges fixed by statute.
Upon the cause being re-instated in the county court, the
charges so excepted by the proviso will be ascertained and
objections to that portion of the taxes overruled.

After the adoption of the appropriation bill the county
board, on April 30, 1915, provided for an election on the
question of issuing bonds. The proposition was carried at
the election, and on August 4, 1915, the board provided, by
resolution, for the levy of an annual tax to pay the prin-
cipal and interest, beginning with the year 1915 to and
including the year 1934. The direct tax was to be for spe-
cific sums and for 1915 was $90,000. On September 3,
1915, the board adopted a supplemental tax levy of $90,000
for that year in accordance with the previous resolution.
Section 12 of article 9 of the constitution requires any
county, city, school district or other municipal corporation
incurring any indebtedness, to provide, before or at the
time of so doing, for the collection of a direct annual tax
sufficient to pay the interest on the debt as it falls due and
to pay and discharge the principal thereof within twenty
years of the time of contracting the same. That provision
is self-executing, and imposes a legal obligation upon the
municipality to provide, before or at the time the bonds are

issued, for their payment by a direct annual tax. (*Petti-bone* v. *West Chicago Park Comrs.* 215 Ill. 304.) Where provision is made for the levy of an annual tax sufficient to produce a specific, fixed sum it amounts to an appropriation of such sum annually, and the provision of the constitution controls any statutory direction, so that the municipality may levy and collect the tax although it may not be included in the appropriation bill made during the first quarter of the fiscal year. That there may be standing appropriations was recognized in *People* v. *Lippincott,* 72 Ill. 578, and the constitutional provision for the levy of fixed amounts annually is of that nature. In such a case there is a lawful appropriation for each year during the existence of the debt and the duty to levy the tax is enforcible by *mandamus.* The municipality could only be compelled to levy the tax because the duty exists, and it exists by virtue of the provision made when the bonds are issued. Included in the appropriation bill were sums for the payment of other bonds of the county, and in the reply brief for appellant it is admitted that resolutions similar to the one relating to the above series were adopted by the county board at the several times when bonds were authorized, so that the legality of the bond taxes is conceded. Aside from that concession the collector made a *prima facie* case, and the burden was upon the objector to show that the mandate of the constitution was not obeyed by providing for a direct annual tax before or at the time of incurring the indebtedness, and the objector offered no evidence that such provision was not made. The court did not err in sustaining the bond taxes.

The same question arises concerning additional tax levies of the city of Chicago to pay principal and interest on bonds. On March 1, 1915, the city council passed seven ordinances authorizing seven bond issues and directing a submission of the same to a vote of the people. The proposals were carried, and on May 4, 1915, the city filed with

the county clerk additional tax levies aggregating $455,852. On May 17, 1915, the council passed two other ordinances for issues of refunding bonds and the ordinances became law, and on June 15, 1915, additional tax levies were filed with the county clerk for the payment of principal and interest on the bonds, amounting to $266,136. The necessity for these levies arose after the adoption of the annual appropriation bill on January 18, 1915. These levies by the city were of the same character as those by the county and were valid.

The issues of bonds were approved by a majority of the legal voters voting on the proposition but were not approved by a majority of the legal voters, and therefore it is argued that the statute prohibiting additional appropriations, unless they are first sanctioned by a majority of the legal voters, applies. But that is not so, because the constitution requires the levies where the appropriation or setting apart of sums is made when the bonds are issued.

The city of Chicago made additional levies for a firemen's pension fund and a police pension fund after the first quarter of the fiscal year. The act for the firemen's pension fund was approved June 29, 1915, and provided that the city should have power to levy a tax for the period of three years, beginning with the year 1915, to be levied and collected in like manner with the general taxes of the city. The act creating a police pension fund also provided for the levy of a tax for a period of three years, beginning with the year 1915. In each case it was provided that in reducing the tax levies the tax should not be taken into account or be considered as a part of the general tax levy and should not be included in the limitation of three per cent of the assessed valuation upon which taxes were required to be extended. Therefore the city had a right to make the levy if the provisions were valid, but it is argued that they were not, because they amended the act for re-

ducing tax levies without printing the law as amended. The act did not amend the statute or affect it in any way but provided for a new and additional tax which should not be within the terms of the Tax Reduction act. It was not necessary, under the constitution, to re-print the statute for reducing the taxes included in its terms. There was no provision in the act creating the mothers' pension fund that it should not be included in the total limitation, and it was therefore held to be included in *People* v. *Chicago, Lake Shore and Eastern Railway Co.* 270 Ill. 477. The taxes for firemen's and police pension funds were legally levied by virtue of the acts authorizing them, although not included in the annual appropriation bill.

The Sanitary District of Chicago adopted for the fiscal year ending December 31, 1915, a tax levy in three items: one for the payment of the principal on maturing bonds, amounting to $1,316,000; another for the payment of the accruing interest on bonds, $505,490; and a third for $4,678,510, for all other corporate, municipal purposes. By the statute creating the sanitary district general power is given to the board of trustees to levy and collect taxes for corporate purposes, the aggregate amount of which in any one year shall not exceed one percentum of the value of the taxable property of the district. The board also has general authority to pass all necessary ordinances, orders, rules, resolutions and regulations for the proper management and conduct of the business of the board and corporation. There is no specific provision that the power of taxation shall be exercised by the passage of anything termed an appropriation bill, but it is implied that appropriations for purposes of the corporation will be made in ordinances by section 5, which is as follows: "All ordinances making any appropriations shall, within one month after they are passed, be published at least once in a newspaper published in such district, or if no such newspaper

of general circulation is published therein, by posting copies of the same in three public places in the district; and no such ordinance shall take effect until ten days after it is so published, and all other ordinances, orders and resolutions, shall take effect from and after their passage unless otherwise provided therein." Section 4 provides that all ordinances, orders, rules and regulations passed by the board shall, before they take effect, be approved by the president of the board, and that his veto may extend to one or more items or appropriations contained in any ordinance making an appropriation or an entire ordinance. The statute is to be interpreted as a whole to ascertain the legislative intent, and while we have been accustomed to the making of appropriations by separate bill on account of the provisions of the Cities and Villages act and the act for the management of the affairs of Cook county, it is clear from a consideration of the entire act that the General Assembly intended appropriations to be made by the trustees for the purposes of the sanitary district and that they should be made by ordinance. Every such ordinance must be published at least once in the district, in a newspaper of general circulation, since there are many such newspapers in the district. This provision is for the security of the tax-payer, who can only protect himself from unlawful expenditures by knowing, before he contributes his money, for what purpose it is to be expended. It was not the intention of the General Assembly that the tax-payer should be in ignorance of the manner in which it is intended to spend money collected by taxation, which would involve the conclusion that section 5 is either meaningless or inserted in the act by inadvertence, which is not permissible. Section 6, providing what shall be received as evidence of the passage and legal publication of ordinances, does not prescribe the method of publication or obviate the necessity of publication, as required by section 5. There is some point in the

process of levying and collecting taxes and paying out the money at which the money is appropriated to some purpose, and when that point is reached the appropriation must be by ordinance published as required by section 5. As no separate appropriation bill was provided for and section 5 refers to some ordinances, it applies to any ordinance levying a tax for corporate purposes which, in substance and effect, is an appropriation of money for corporate purposes, to be supplied by taxation. The provisions of the act creating the sanitary district were in substance repeated in the Forest Preserve act and were construed in the case of *Perkins* v. *Commissioners of Cook County, supra,* and it was held that an ordinance for issuing bonds was an ordinance appropriating money within the meaning of the statute.

The ordinance levying the tax was an ordinance making an appropriation and came within the terms of section 5. It was not published as required by that section, and so far as an appropriation was required for the tax levy of 1915 the tax levy was void. The tax levy, however, was in separate items: one for the payment of principal on maturing bonds, amounting to $1,316,000; and another for the payment of accrued interest on bonds, $505,490. The sanitary district is within the provision of section 12 of article 9 of the constitution requiring a provision, before or at the time of incurring any indebtedness, for the collection of a direct annual tax sufficient to pay the interest on the debt as it falls due and to pay and discharge the principal thereof within twenty years of the time of contracting the same. What has been said regarding the taxes levied to pay principal and interest on county bonds applies to the sanitary district, and if the constitution was complied with there was a lawful appropriation for each year during the existence of the debt. The collector made a *prima facie* case by the introduction of the tax, judgment, sale, redemption and forfeiture record and proof of notice of application for judg-

ment.  The law then imposed the burden on the objector to prove a want of compliance with those provisions of the constitution and law necessary for a valid tax levy, and while it was stipulated that the tax levy ordinance was the only ordinance, order or resolution passed by the board of trustees for the levy of taxes for the sanitary district for the year 1915, and that the board did not publish the ordinance at any time in any newspaper or post any copy of the same in any place, there was no evidence that provision was not made for a direct annual tax sufficient to pay the principal and interest.  The taxes for the payment of principal and interest on maturing bonds and for the payment of accrued interest on the bonds were not shown to be invalid, and so far as those taxes are concerned the judgment was right, but the court erred in overruling the objection to the levy of $4,678,510 for the current corporate, municipal purposes of the district.

The judgment of the county court is affirmed as to all taxes levied for the payment of principal and interest on bonds and for the firemen's pension fund and the police pension fund and is reversed as to all other taxes involved in this appeal, and the cause is remanded to the county court, with directions to sustain objections and deny judgment as to all taxes held invalid in this opinion and to ascertain what portion of the county tax was levied to pay any charge upon the county imposed by law without the action of the board of commissioners, including fixed salaries of officers required by law to be paid from the county treasury, and to pay jurors' fees and other charges fixed by law, according to the rules stated in this opinion, and to overrule objections to such taxes.

*Reversed in part and remanded.*