---

(No. 11179.—Reversed in part and remanded.)
THE PEOPLE *ex rel.* Henry Stuckart, County Collector, Appellee, *vs.* TAYLOR A. SNOW, Appellant.

*Opinion filed June 21, 1917.*

1. CONSTRUCTION—*general rule for counting days in a statutory provision for publication.* As a general rule the time within which publication or any act provided by law is to be done is computed by excluding the first day and including the last.

2. TAXES—*when appropriation ordinance takes effect.* Under the provision of paragraph 64 of the Cities and Villages act that no appropriation ordinance shall take effect until ten days after it is published such an ordinance takes effect on the tenth day after the publication, not counting the day of publication.

3. SAME—*what is a sufficient publication of appropriation ordinance.* Publication of the annual appropriation ordinance of the city of Chicago in a noon edition of the *Chicago Evening Post* is a sufficient publication to satisfy paragraph 64 of the Cities and Villages act.

APPEAL from the County Court of Cook county; the Hon. JOHN H. WILLIAMS, Judge, presiding.

279 — 19

ENOCH J. PRICE, for appellant.

MACLAY HOYNE, State's Attorney, (SAMUEL A. ET-
TELSON, Corporation Counsel, CHARLES CENTER CASE, JR.,
FELSENTHAL & WILSON, WILLIAM F. STRUCKMANN, ED-
MUND D. ADCOCK, ROSS C. HALL, WALTER E. BEEBE, LEON
HORNSTEIN, and JOSEPH F. GROSSMAN, of counsel,) for
appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the
court:

Taylor A. Snow prosecutes this appeal from an order
and judgment of sale against his property, rendered in the
county court of Cook county for delinquent taxes for the
year 1915. All the objections raised in appellant's brief,
except with reference to the publication of the appropria-
tion ordinance in the *Chicago Evening Post,* were raised in
*People* v. *Day,* 277 Ill. 543, *People* v. *Huey,* id. 561, *People*
v. *Reinhold,* id. 565, and *People* v. *Sandberg Co.* id. 567.
The decisions in those cases are necessarily controlling here
and the questions therein raised need no further discussion.

Paragraph 64 of chapter 24 of the Illinois statutes pro-
vides among other things: "All ordinances of cities and
villages   *   *   *   making any appropriation, shall, within
one month after they are passed, be published at least once
in a newspaper published in the city or village, or, if no
such newspaper is published therein, by posting copies of
the same in three public places in the city or village; and
no such ordinance shall take effect until ten days after it is
so published." (Hurd's Stat. 1916, p. 310.) The eleventh
paragraph of section 1 of chapter 131 of the Illinois stat-
utes provides: "The time within which any act provided
by law is to be done shall be computed by excluding the
first day and including the last, unless the last day is Sun-
day, and then it also shall be excluded." (Hurd's Stat.
1916, p. 2576.) The time for which any notice is to be

given is computed in the same manner by section 6 of chapter 100 of the statutes. (Hurd's Stat. 1916, p. 1802.) This court has held that where a statute provides that at least .ten days' notice shall be given, in computing the time the first day is to be excluded and the last day included in the computation. (*Gordon* v. *People,* 154 Ill. 664; *Brown* v. *City,,of Chicago,* 117 id. 21.) The same rule of computation has also been applied in computing the last day for service to a given term of court. (*Bowman* v. *Wood,* 41 Ill. 203; *Harper* v. *Ely,* 56 id. 179; see to the same effect, *Roan* v. *Rohrer,* 72 id. 582, and *Pugh* v. *Reat,* 107 id. 440.) For authorities in other jurisdictions adopting the same rule of computation, see note to *Halbert* v. *San Saba Springs Land Ass'n,* 49 L. R. A. 193.

Counsel for appellant contends that all the taxes levied for the city of Chicago for 1915 are illegal for the reason that the appropriation ordinance passed by said city and published on January 29, 1915, did not become effective, as the only tax levy ordinance passed by said city was passed February 8, 1915; that therefore ten days had not intervened, as required by statute, before such ordinance could be enforced. Under the decisions already cited as to the rule to be adopted in computing time the ordinance in question became in full force and effect on February 8, 1915, hence this objection of counsel must be overruled. This in no way conflicts with the holding of this court in *People* v. *Florville,* 207 Ill. 79, cited and relied on by counsel for appellant.

Counsel further insists that the publication of said ordinance on January 29 was insufficient; that it was not printed in all the copies of the *Post* issued on that day or in the main edition but only in a smaller number of copies delivered and sold at certain news stands, whereas, under the law, the said ordinance should have been printed in all the copies of the newspaper published on said publication day. The evidence in the record shows that on January 29

the *Chicago Evening Post* was a daily newspaper and was published on six different days each week in seven editions daily,—that is, the noon edition at 9:45 A. M., the after-noon edition at 11:20 A. M., the home edition at about 1:15 P. M., the market edition at 2:30, and three sporting editions at about 3:00, 4:00 and 5:00 P. M., respectively. The city of Chicago on January 5, 1915, entered into a con-tract with the Chicago Evening Post Company as to the official printing for the year 1915. The contract provided that said company should print all matters and things re-quired by law or any city ordinance to be printed, in at least one edition of the *Chicago Evening Post.* All copies of that paper for January 29, 1915, bore a single number, (7651,) which refers to the number of days that the paper had been issued, each number denoting an issue. Articles on the editorial page and other general news are prac-tically the same in all editions on a given day and are printed from the same type, but each edition has its distinc-tive feature. The noon edition of that date carried on its date column the words "Noon Edition," and at the top of the first page, to the right of the title, the words "Official Newspaper of the City of Chicago." It appears that each of said editions of the paper has its own list of subscribers, and the places where the copies are delivered are distinct and separate and the papers are kept distinct and separate in the office of the paper. It further appears that said ap-propriation ordinance appeared only in the noon edition of that date, which edition consisted of 6100 copies; that in a general way said copies were circulated in the central dis-trict of the city, which would constitute the territory be-tween the river on the north and Twelfth street on the south, the river on the west and the east side of Michigan boulevard on the east; that they were principally sold from news stands, but were also given circulation in all the lead-ing clubs and hotels of the city and delivered to regular

subscribers; that the edition went to practically every news
stand open at that hour in the city of Chicago and was also
on sale at the elevated railway stations, and some of the
papers were taken by passengers on railroad trains to other
cities and to the suburbs; that the paper is not limited in
its circulation to any particular class of people but that it
went out generally to the public as a newspaper.

Section 5 of chapter 100 provides: "When any notice
is required by law or contract to be published in a news-
paper (unless otherwise expressly provided in the contract)
it shall be intended to be in a secular newspaper of gen-
eral circulation, published in the city, town or county, or
some paper specially authorized by law to publish legal no-
tices, in the city, town or county." (Hurd's Stat. 1916,
p. 1802.)

The question involved under this objection is whether
said noon edition is a newspaper of general circulation in
the city of Chicago. In *Pentzel* v. *Squire*, 161 Ill. 346, the
court, in construing this statute as to publication, held that
the *Chicago Law Journal Weekly* was such a newspaper,
when it was shown that it was a newspaper of 16 pages,
12½ inches in length and 10 inches in width, published each
week on Friday and circulated among lawyers and laymen;
that besides the reports of decisions of courts of record,
of courts of review and of appellate jurisdiction and a di-
gest of cases, it contained news of a general nature of
current events and of general importance to the public, its
average weekly circulation being 3875 copies. It was said
in that case in discussing the proper construction of this
statute, that upon substantially the same evidence as con-
tained therein this court had held in *Kerr* v. *Hitt*, 75 Ill.
51, *Railton* v. *Lauder*, 126 id. 219, and *Maass* v. *Hess*, 140
id. 576, that certain papers were secular newspapers of
general circulation within the meaning of said section 5. A
like holding was made in *Miller* v. *Barto*, 247 Ill. 104, with
reference to a paper similar to the *Chicago Law Journal*.

On the facts and reasoning in those cases the conclusion necessarily follows that this publication in the noon edition of the *Chicago Evening Post* was a publication in a secular newspaper of general circulation, as required by the statute. Surely such publication comes within the letter and spirit of the statute as being a secular newspaper of general circulation as much as did the *Chicago Legal News,* the *Chicago Law Bulletin* or the *National Corporation Reporter,* which were so held by this court in the decisions cited. The authorities from other jurisdictions cited and relied on by counsel for appellant cannot be held conclusive here, because the statutes construed in most other jurisdictions are different in wording from said section 5, and because in many of those cases the facts as to the circulation of the newspapers there in question were very different from the facts presented in this record. To hold as contended by appellant would make it necessary to publish in every edition of a newspaper for a given day in the city of Chicago, no matter how large or how general the circulation of any edition. Such a requirement would cost much more than to publish in one edition, and would serve no reasonable purpose. We do not so construe the statute. This objection of appellant was therefore rightly overruled by the trial court.

For the reasons given in this opinion and in the opinions in *People* v. *Day, supra, People* v. *Huey, supra, People* v. *Reinhold, supra,* and *People* v. *Sandberg Co. supra,* the judgment in this case is affirmed in part and reversed in part and remanded for further proceedings in harmony with the views and conclusions reached herein and in the decisions last cited.          *Reversed in part and remanded.*