## Ulysses S. Schwartz et al., Appellees, v. City of Chicago et al., Appellants.

### Gen. No. 27,469.

1. APPEAL AND ERROR—*unsatisfactory method of preparing records for review.* In a bill to restrain a city and certain of its officers from expending certain moneys, the method obtaining in the preparation of records for review was criticized because of the failure to give the reviewing court the benefit of the chancellor's opinion.

2. MUNICIPAL CORPORATIONS—*control of city council of Chicago over city's finances.* Section 1, art. V, and sec. 1, art. VIII, ch. 24, Rev. St. (Cahill's Ill. St. ch. 24, ¶¶ 65, 115), considered, and *held* that the City Council of Chicago is clearly given paramount control over the city's finances.

3. MUNICIPAL CORPORATIONS—*duty of city comptroller of Chicago to make up and submit budget.* Section 17, art. VII, ch. 24, Rev. St. (Cahill's Ill. St. ch. 24, ¶ 108) makes it the duty of the city comptroller of Chicago to make up a budget and submit it to the council so that they can intelligently pass an appropriation ordinance for the fiscal year.

4. WORDS AND PHRASES—*"appropriation."* "Appropriation," defined.

5. MUNICIPAL CORPORATIONS—*validity of condition attached to council's appropriation of funds for additional employees.* The City Council of Chicago, having been given control of the city's finances, was acting within its authority when, in creating a fund for additional employees which would be needed in the city clerk's department, it attached the condition to the appropriation ordinance in question, that the money could not be expended or persons thereafter employed without the council's approval; and the making of expenditures for that purpose without such consent was properly enjoined at the suit of taxpayers.

6. MUNICIPAL CORPORATIONS—*validity of condition attached to council's appropriation of funds for litigation.* Under an appropriation ordinance appropriating funds to the office of the corporation counsel of Chicago for public utilities litigation, to be expended only under the direction of the City Council, the condition that the money was to be only so expended was good if the item contemplated that the litigation might or might not be undertaken, but depended upon some future action of the council; but such condition was not warranted if the matters were certain, as where a specific appropriation is made for an expense that is reasonably

certain to be incurred, no condition can legally be attached to the expenditure of the money.

7. MUNICIPAL CORPORATIONS—*when invalid condition attached to council's appropriation of funds invalidates appropriation.* As to those offices which are created by ordinance, the council may in the creative ordinance impose such conditions on expenditures of money which thereafter may be appropriated as it may deem advisable, but where there are no conditions in such ordinance, the council may not impose any in a subsequent appropriation ordinance as to such moneys that it is then reasonably certain will be required; and where in an ordinance the condition requiring the consent of the council to the making of expenditures by the corporation counsel's office in relation to certain litigation was held invalid, the appropriation also was held invalid and to have been properly enjoined, because the condition was not severable from the appropriation, as the council would not have included such item in the ordinance without the condition.

8. MUNICIPAL CORPORATIONS—*when error to enjoin disbursement of funds.* Where the ordinance in question was approved by the people and constituted a valid appropriation of the funds derived from the sale of the bonds for the purpose of the contemplated improvement, the City Council, had it desired to retain control of the funds, should have so provided in the ordinance authorizing the issuance of the bonds, and, having failed so to do, an attempt to reappropriate such funds was a nullity, and it was error to enjoin the disbursement of the funds at the suit of taxpayers.

9. APPEAL AND ERROR—*presumption against pleader.* The rule that in case of doubt the allegations of a bill will be taken against the pleader, applied against the complainant in a bill to enjoin the expenditure of funds realized from a bond fund, where the allegations of the bill did not advise the court whether such fund had not been validly appropriated by the approval by the people of an ordinance for the bonds.

Appeal from the Circuit Court of Cook county; the Hon. JOHN A. SWANSON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Order affirmed in part and reversed in part. Opinion filed December 21, 1921. Rehearing denied January 4, 1922.

SAMUEL A. ETTELSON, for appellants; LEON HORNSTEIN and ROBERT C. O'CONNELL, of counsel.

LOUIS E. HART and LAWRENCE A. COHEN, for appellees.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Ulysses S. Schwartz, Rose A. Woodhull and Guy Guernsey, as taxpayers of Chicago, filed their verified bill of complaint in the circuit court of Cook county against the City of Chicago, George F. Harding, comptroller, and Clayton F. Smith, treasurer of the city, praying, inter alia, that defendants be restrained and enjoined from expending certain public moneys in the hands of the city treasurer. Upon the filing of the bill complainants moved the court for an order enjoining the defendants pending the hearing of the cause. The matter came on for hearing on the face of the bill and the order as prayed for was entered, to reverse which defendants have prosecuted this appeal.

The question, therefore, to be determined is whether, prima facie, the bill states a cause of action. It is alleged that complainants are citizens, residents and taxpayers of Chicago; that they are duly qualified, elected and acting members of the City Council of Chicago and are members of the finance committee of the council; that the defendants George F. Harding and Clayton F. Smith are the duly qualified comptroller and treasurer, respectively, of the City of Chicago, and that all the funds of the city are held by the treasurer and disbursed by him on warrants issued by the comptroller.

That in accordance with the statutes of Illinois the city council, within the first half of the fiscal year of 1921, passed the annual appropriation ordinance or bill in and by which moneys were appropriated to defray the necessary expenses of the city for that year; that in making these appropriations the ordinance specifies in detail the objects and purposes for which they were made and the amount appropriated for each object or purpose, as is required by statute.

That through the efforts of certain members of the city council and certain public-spirited citizens of

the city, a plan has been developed for beautifying and improving the city, and for the purpose of carrying out such plan, the city council passed an ordinance providing for the widening, extension and improvement of Ashland avenue, and that this ordinance was approved by the mayor; that to defray a part of the expense of such improvement the city council passed another ordinance providing for the issuance of bonds; that this ordinance was approved by the mayor and afterwards, in accordance with the statute, was submitted for approval to the qualified voters of Chicago, and that by such vote duly taken the ordinance was approved and bonds issued of the par value of $5,800,-000, bearing interest at the rate of 4 per cent per annum and redeemable at stated intervals; that a portion of these bonds of the face value of $2,880,000 have been sold and are being held by the several investors, and that the balance of such authorized bond issue is held by the city authorities ready to be sold when purchasers may be found, and that it is the intention of the city officials to sell these bonds at the earliest possible moment; that the city has already realized from the sale of the bonds more than $2,500,000, and in the near future will realize from a sale of the balance of them an additional sum of more than $2,500,000.

That in accordance with the terms of the ordinance authorizing the issuance of the bonds, payment of the principal and interest is required to be made by taxation from year to year, as they become due, upon the taxable property of the city. The bill further sets up that similar ordinances have been passed with reference to the improvement of Michigan avenue and that bonds for this purpose have been authorized, issued and sold to the public, and that from the proceeds thereof there is in the city treasury certain funds. The bill then sets up 38 items appropriated in the annual appropriation of 1921, and it is the expenditure of these that is enjoined. The bill further alleges that

these items, as set forth in the appropriation ordinance, cannot be expended unless the city council shall so direct, because in the appropriation ordinance it is provided that before the several sums can be expended the approval of the city council must be obtained, and that its approval has not been given, but that nevertheless the city officials are about to expend said sums of money, or parts of them, without the approval of the city council, basing their authority for so doing on the opinion of the corporation counsel, which holds that the money is available without any further action of the council. It is also averred that in the annual appropriation ordinance of 1920, it was specifically provided that certain moneys derived from the sale of bonds issued to defray a part of the cost of the improvement of Ashland avenue and Michigan avenue should not be expended except under order of the city council; that contrary to this provision the comptroller drew warrants upon these funds and "falsely and fraudulently" certified upon them that the expenditure of the moneys had been ordered by the city council, and that these warrants were paid by the city treasurer out of such funds, the payments aggregating more than $2,000,000. It is further averred that it is the purpose of the comptroller, without any order of the city council and contrary to the express terms of the 1921 appropriation ordinance, to disburse large sums from certain of the items the expenditure of which is enjoined, to certain "so-called real estate experts and so-called building experts" for services claimed by the comptroller to have been rendered in carrying out the plan to beautify the city, but for which services complainants alleged the so-called experts have already been many times compensated from the appropriations made for 1920. Other allegations are made that the terms of the appropriation ordinance of 1921, requiring approval by the city council before expenditures can be made, will be disregarded.

The items of the appropriation in question fall into three general classes, and, we think, it will be sufficient if we quote the language of an item of each class.  The appropriations ordinance contains the following:

"CITY CLERK

Class 1.    For the employment of such duly certified Civil Service Employes as may hereafter be authorized by the City Council  ................    $5,724.00

DEPARTMENT OF LAW

*Public Utilities Litigation*

The following amount to be reimbursed so far and to the extent that the same legally may be done from the Traction Fund:

Class 2.    For the employment of Special Counsel, Engineers, Accountants and other employes and the payment of necessary expenses, for public utilities litigation, including surface lines, elevated railroads and telephone company, to be expended only under the direction of the City Council    $200,000.00

\*   \*   \*   \*   \*

ASHLAND AVENUE STREET IMPROVEMENT BOND FUND

Class. 3.    For the construction of bridges, viaducts and other structures in connection with the opening, extension, widening and improvement of Ashland Avenue.  No expenditures shall be made nor obligation incurred unless previously ordered by the City Council..........$3,484,518.40"

It is the contention of complainants that the appro-

priations are valid as made in the appropriation ordinance, and, therefore, the moneys cannot be properly expended without further action of the city council. They make the further contention that if it should be held that the council, under the law, was not authorized to attach the conditional provisions to the several items, then the appropriations were invalid because it is clear that without the conditions the appropriations would not have been made, and, in either view, the court properly enjoined the expenditure.

On the other hand, defendants' position is that the conditions attached to the appropriations by the city council are invalid and void, but that they may be properly severed from the appropriations, and that the appropriations are, therefore, valid and the expenditures should not have been enjoined.

Owing to the imperfect method which obtains in the preparation of records for review by this court, we are given no light as to what was the view of the chancellor, and are thereby deprived of any benefit of his opinion, which we should have. Upon a consideration of the statutes it is clear that the City Council of Chicago is given paramount control over the city's finances. Section 1, art. V, ch. 24, Rev. St. (Cahill's Ill. St. ch. 24, ¶ 65) provides that the city council shall control the finances and property of the city, and that they shall appropriate money for corporate purposes only for the payment of its debts and expenses, and levy and collect taxes. By the same section the council is given power to borrow money on the credit of the city for corporate purposes and to issue bonds therefor in such amounts as they shall by ordinance prescribe, not, however, in excess of 5 per cent of the value of the taxable property of the city, and that they shall, before or at the time of incurring any indebtedness, provide for the collection annually of sufficient taxes to pay the principal and interest of the bonds as

they fall due.  Section 1, art. VIII, ch. 24, Rev. St. (Cahill's Ill. St. ch. 24, ¶ 115) provides that the city council shall, within the first quarter of the fiscal year, pass an annual appropriation ordinance, in which ordinance such sum or sums of money shall be appropriated as may be deemed necessary to defray the expenses of the city, and that such appropriation ordinance "shall specify the objects and purposes for which such appropriations are made and the amount appropriated for each object or purpose," and that no other appropriation shall be made for the fiscal year unless the proposition to make such appropriation shall have been first sanctioned by a majority of the legal voters of the city.  By section 1, art. VIII, ch. 24, Rev. St. (Cahill's Ill. St. ch. 24, ¶ 115) the city council is required on or before the third Tuesday of September in each year to levy and collect taxes for corporate purposes.  This is to be done by an ordinance specifying "in detail the purposes for which such appropriations are made and the sum or amount appropriated for each purpose respectively" and that a certified copy of this ordinance shall be filed with the county clerk.

Before an appropriation ordinance is prepared it is, by section 17, art. VII, ch. 24, Rev. St. (Cahill's Ill. St. ch. 24, ¶ 108), made the duty of the city comptroller to submit to the council a report of his estimates of the moneys necessary to defray the expenses of the city for the fiscal year.  This report must classify the different objects and branches of expenditures, giving, as nearly as may be, the amount required for each, and the comptroller is authorized to require officials of the different departments of the city to prepare for him a statement of the condition and expense of their respective departments, so that he may be enabled to prepare his report for the council.  From this it appears that it is the comptroller's duty to make up a budget and submit it to the city council so that they

can intelligently pass an appropriation ordinance for the fiscal year.

What constitutes an appropriation has been the subject of consideration in many cases, and it is variously defined as "A setting apart from public revenue of a certain sum of money for a specific object, in such manner that the executive officers of the government are authorized to use that money and no more for that purpose and no other." 4 Corpus Juris, 1460. Webster's definition of "appropriation" so far as here pertaining is: "The act of setting apart or assigning to a particular use or person in exclusion of all others; application to a special use or purpose, as of money to carry out some object." Numerous other definitions are given but all to the same effect. The question then recurs, are the appropriations mentioned in the bill of complaint valid or invalid?

Class 1. The first item of this class is for the employment of "duly certified Civil Service Employes as may hereafter be authorized by the City Council." This item is included in the appropriations made to the city clerk. We have not the appropriation ordinance or bill before us, but since this is the only item appropriated to the city clerk to which objection is made, we must assume that all of the proper expenses of that office, including salaries, to all of the employees, have been properly appropriated. This being true, we think the council was authorized to create a fund for additional employees which might thereafter be necessary, and attach as a condition that the money could not be expended or persons thereafter employed without the council's approval. The council was evidently uncertain and did not know whether additional employees would be needed in that department. In these circumstances, the council having been given control of the city's finances by statute, we think it was acting within its authority in attaching the condition and, therefore, the expenditures mentioned were

properly enjoined. The following items mentioned in the bill of complaint, which we think come within this class, and are subject to this holding, are: 15-A-1, $5,724; 20-A-30, $12,108; 22-S-5, $5,000; 23-A-1, $882; 24-A-4, $3,708; 27-A-1, $1,206; 30-A-18, $9,840; 35-S-1, $25,000; 36-A-1, $7,110; 37-A-100, $23,850; 40-A-1, $6,696; 41-A-1, $2,700; 50-A-14, $10,296; 60-A-7, $1,008; 65-A-41, $5,274; 71-A-1, $558; 76-A-23, $5,022; 77-A-2, $504; 81-A-20, $1,008; 85-D, $67,000. (The expenditure of this last item was properly enjoined except the $3,000 for street dirt boxes. There was no condition attached to this $3,000 and, therefore, the injunction as to it was wrong.) 91-A-2, $504; 280-D, $48,233; 280-S-43, $100,000; 106-X-41, $925,000.

Class 2. There is but one item in this class, that is the appropriation of $200,000 to the office of the corporation counsel for public utilities litigation. This appropriation as stated in the appropriation ordinance is "For the employment of Special Counsel, Engineers, Accountants and other employes and the payment of necessary expenses, for public utilities litigation, including surface lines, elevated railroads and telephone company, to be expended only under the direction of the City Council." We are unable to say from what appears in the bill of complaint whether the litigation mentioned is certain to occur. If this item contemplates that the litigation may or may not be undertaken but depends upon some future action of the Council, then we are of the opinion that the condition as to this item, viz., that the money was to be spent only under the direction of the city council, is good; but if the matters are certain, then the condition was not warranted. Where a specific appropriation is made for an expense that is reasonably certain to be incurred, we are of the opinion that no condition can legally be attached to the expenditure of the money in the appropriation ordinance.

The office of corporation counsel is created by ordi-

nance pursuant to section 2, art. VI, ch. 24, Rev. St. (Cahill's Ill. St. ch. 24, ¶ 76). That section provides that "The city council may, in its discretion, from time to time, by ordinance passed by a vote of two-thirds of all the aldermen elected, provide for the election by the legal voters of the city, or the appointment by the mayor, with the approval of the city council of * * * a corporation counsel." Section 3 (Cahill's Ill. St. ch. 24, ¶ 77) of the same article provides that: "All officers of any city, except where herein otherwise provided, shall be appointed by the mayor * * * by and with the advice and consent of the city council. The city council may, by ordinance not inconsistent with the provisions of this Act, prescribe the duties and define the powers of all such officers."

It is certain that as to those offices which are created by ordinance the council may in the creative ordinance impose such conditions on expenditures of money which thereafter may be appropriated as it may deem advisable. But we think that where there are no conditions in such ordinance the council may not impose any in the appropriation ordinance as to such moneys that it is then reasonably certain will be required. It does not appear from the allegations of the bill whether the public utilities litigation referred to is reasonably certain or only contemplated, and inasmuch as we are obliged to construe the allegations most strongly against the complainants, we must assume that the litigation is reasonably certain and, therefore, the council may not impose the condition as to this item. But we are of the opinion that the condition is not severable from the appropriation and that the council would not have included this item in the appropriation ordinance without the condition. It follows, therefore, that this item of the appropriation ordinance was invalid and the appropriation of it was properly enjoined.

Class 3. In this class the record discloses that an

appropriation was made from the "ASHLAND AVENUE STREET IMPRROVEMENT BOND FUND" for the construction of bridges and other structures in connection with the Ashland avenue improvement. From the bill of complaint it appears that the city council passed an ordinance providing for this improvement and another ordinance authorizing the issuance of bonds to defray a part of the cost of it. This latter ordinance was submitted to a vote of the people in accordance with the constitution and the statute. The bonds were issued, some of them sold, and the funds derived from such sale, and now in the city treasury, are sought to be appropriated by the annual appropriation ordinance of 1921. When the council passed the ordinance authorizing the issuance of those bonds and that ordinance was approved by the people and the bonds sold, this was an appropriation of the funds thus raised to the object mentioned in the ordinance, viz., the construction of bridges and other structures in connection with the Ashland avenue improvement. No further appropriation was necessary and the attempted appropriation in the ordinance for 1921 was of no force or effect. *People v. Wabash Ry. Co.*, 281 Ill. 382; *People v. Day*, 277 Ill. 543. In the *Wabash Ry. Co.* case, bonds were issued pursuant to section 12, art IX of the Constitution, and section 1, art. V, ch. 24, Rev. St. (Cahill's Ill. St. ch. 24, ¶ 65). It was there held that a tax levy to pay the principal and interest of the bonds as they became due was authorized without including such tax levy in the annual tax levy ordinance. In that case, as in the instant case, the ordinance authorizing the issuance of the bonds was submitted to a vote of the people. The court there said (p. 384): "In *People v. Day*, 277 Ill. 543, it was held that section 12 of article IX of the Constitution, requiring any municipality issuing bonds to provide for a direct annual tax to pay the interest as it falls due and to pay the principal within 20 years, is self-executing, so that a municipal-

ity which has complied with such provision may levy and collect a tax although it is not included in the annual appropriation bill required by the statute." In the *Day* case it was objected that certain taxes sought to be levied were invalid because they were not included in the annual appropriation ordinance or bill. After the passage of the annual appropriation ordinance but before the tax levy ordinance was passed, certain other ordinances were passed authorizing the issuance of bonds under the constitution and statute before mentioned, and it was held that these might legally be included in the tax levy ordinance, and that the raising of the money by means of the sale of the bonds was an appropriation of the funds to the particular object mentioned in such ordinance. In that case the Board of County Commissioners of Cook County passed the annual appropriation bill February 26, 1915, and April 30 following they passed an ordinance providing for the issuance of bonds. The ordinance was afterwards approved by a vote of the people and later, on September 3, a supplemental tax levy was made to raise funds to pay certain of the bonds. The court in passing on the legality of the tax levy referred to section 12, art. IX of the Constitution, and said (p. 554): "That provision is self-executing, and imposes a legal obligation upon the municipality to provide, before or at the time the bonds are issued, for their payment by a direct annual tax. (*Pettibone v. West Chicago Park Com'rs*, 215 Ill. 304.) Where provision is made for the levy of an annual tax sufficient to produce a specific, fixed sum it amounts to an appropriation of such sum annually, and the provision of the constitution controls any statutory direction, so that the municipality may levy and collect the tax although it may not be included in the appropriation bill made during the first quarter of the fiscal year. That there may be standing appropriations was recognized in *People v. Lippincott*, 72 Ill. 578, and the constitutional

provision for the levy of fixed amounts annually is of that nature. In such a case there is a lawful appropriation for each year during the existence of the debt and the duty to levy the tax is enforceable by mandamus.'' The court then passed on a similar ordinance of the City of Chicago and held the tax sought to be raised under it valid. Continuing, the court said (p. 559): ''The provisions of the act creating the sanitary district were in substance repeated in the Forest Preserve Act and were construed in the case of *Perkins v. Board Com'rs Cook County, supra* (271 Ill. 449), and it was held that an ordinance for issuing bonds was an ordinance appropriating money within the meaning of the statute. * * * What has been said regarding the taxes levied to pay principal and interest on county bonds applies to the sanitary district, and if the constitution was complied with there was a lawful appropriation for each year during the existence of the debt.''

While these authorities do not pass on the precise point before us, viz., whether it is necessary to reappropriate funds which have been derived from a sale of bonds pursuant to an ordinance approved by the people, yet we think the principle announced in them is applicable. The ordinance for the bonds in question provided that the bonds to be issued and the funds derived from the sale thereof be applied to the improvement of Ashland avenue. This ordinance was approved by the people and constitutes a valid appropriation of the funds derived from the sale of the bonds for the purpose of the improvement mentioned. If the city council desired to retain control over these funds, it should have so provided in the ordinance authorizing the issuance of the bonds. From the allegations of the bill we assume that this was not done. It follows, therefore, that the attempt of the city council in 1921 to reappropriate these funds was a nullity, and the disbursement of the funds should not have

Schwartz v. City of Chicago, 223 Ill. App. 184.

been enjoined. What we have said, of course, applies with equal force to the two items of $1,000 each appropriated from the Michigan avenue improvement bond funds.

As to the item of $173,511.72, appropriated from "WASTE DISPOSAL AND BUILDING EQUIPMENT BOND FUND" and the two items of $50,000 and $75,838.23 from the "HOUSE OF CORRECTION BOND FUND FOR HOUSE OF SHELTER FOR WOMEN AND FARM COLONY," the allegations of the bill are not such as to advise us whether these funds were raised from a sale of bonds pursuant to an ordinance similar to that for the Ashland avenue fund. Therefore, under the rule of law applicable to such pleading, the doubt must be resolved against the complainants, and, therefore, the injunction was improper as to these three items. Of course, if, upon a trial, the facts show our presumption is unwarranted, it may be that these items cannot be expended without the approval of the city council.

For the reasons stated the order appealed from is affirmed in part and reversed in part. Each party will be required to pay its own costs in this court.

*Order affirmed in part and reversed in part.*

THOMSON and TAYLOR, JJ., concur.